IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ACE PROPERTY AND CASUALTY )
INSURANCE COMPANY, )
 )
    Plaintiff, )
 )      CIVIL ACTION FILE
vs. )
 )      NO. 1:15-CV-0949-WBH
LIBERTY SURPLUS INSURANCE )
CORPORATION; *et. al.,* )
 )
    Defendants. )

## NOTICE OF FILING

Defendant American Guarantee & Liability Company files with the Court the following documents in connection with its Motions for Summary Judgment filed against Liberty Surplus Insurance Corporation and ACE Property and Casualty Insurance Company.

**(1)** July 24, 2014 report (Exhibit "20" to depositions, Liberty001256-001261);

**(2)** October –November, 2014 "group" emails (Exhibit 56 to depositions, Liberty001277-80);

**(3)** ACE claim notes (Exhibit 67 to depositions, CH2556-2580);

**(4)** Liberty claim notes (Exhibit 44 to depositions, Liberty000925-951);

**(5)**     January 15, 2015 email (Exhibit 61 to deposition, Liberty 001416; and

**(6)**     January 19, 2015 emails (CH0279-280).

This 31st day of October, 2017.

Respectfully submitted,

*/s/ Melissa K. Kahren*
Stephen M. Schatz
Georgia Bar No. 628840
Steve.Schatz@swiftcurrie.com
Thomas B. Ward
Georgia Bar No. 153081
Tom.Ward@swiftcurrie.com
Melissa K. Kahren
Georgia Bar No. 527406
Melissa.Kahren@swiftcurrie.com
Attorneys for American Guarantee

**Swift, Currie, McGhee & Hiers, LLP**
1355 Peachtree St. N.E., Suite 300
Atlanta, Georgia 30309
(404) 874-8800



WEINBERG WHEELER
HUDGINS GUNN & DIAL

Christopher T. Byrd
cbyrd@wwhgd.com
Direct 404.832.9546

July 24, 2014

VIA ELECTRONIC MAIL DELIVERY

Ms. Michele M. Simpson, CPCU
Claims Manager
US Casualty Claims
Liberty International Underwriters
55 Water Street, 18th Floor
New York, NY 10041

Mr. Darin Collier
WSE, LLC
5909 Peachtree Dunwoody Rd., Ste. 400
Atlanta, GA 30328

Ms. Faye J. Wali, CPA, CCIM
Chief Financial Officer
The Worthing Companies
5909 Peachtree Dunwoody Rd., Suite 400
Atlanta, GA 30328

Mr. Joe Cahill
Aslan Commons, LLC
20 Pacifica, Suite 450
Irvine, CA 92618

Ms. Miriam Mosseri
ACE Group
Post Office Box 5119
Scranton, PA 18505-0549

Michael H. Schroder, Esq.
Swift Currie
1355 Peachtree Street, NE
Suite 300
Atlanta, GA 30309

Jack "Tre" Horton III, J.D.
Claims Specialist Assistant Vice President
Corporate Solutions Departments
Swiss Reinsurance America Holding Corp
PO Box 2991
Overland Park, KS 66201-2991

Re: *Stephen D. Wells v. Aslan Commons, LLC, et al.*
Civil Action File No. 12EV014728F, State Court of Fulton County
Claim No.: 5SCAS00152481
D/L: 05-31-2010

Dear All:

The purpose of this correspondence is to provide you with an updated status/issue report on the above referenced case. As you are aware, dispositive motions have been heard (both Plaintiff's and Defendants' motions were denied). Thus, there is nothing standing in the way of a trial setting, and, while that has yet to happen, I anticipate this matter will appear on a summer or early fall trial calendar. I would suggest that, once everyone has had an opportunity to review this correspondence, we conduct a conference call to fully discuss the trial strategy.

Atlanta | Las Vegas | Miami

EXHIBIT

20

LIBERTY 001256

**CONFIDENTIAL**



WEINBERG WHEELER
HUDGINS GUNN & DIAL

July 24, 2014
Page 2

### I.    Liability.

We think it is inevitable that some amount of liability will be found against the property manager, WSE.  The unavoidable facts of the case are that (1) the applicable code required that the gas line be fitted with a cap, (2) this gas line had no such cap, and (3) if the gas line had such a cap, the explosion would not have occurred.  It will be difficult, if not impossible, to convince the jury that the apartment management company did not have a duty to abide by the applicable fire code.  Once a duty is found to exist, Plaintiff will easily be able to establish breach and damages.

Our defense, as far as liability is concerned, is two-fold.  First, we will attempt to convince the jury that WSE acted reasonably, despite the absence of the cap.  We will offer evidence that WSE retained qualified building inspectors to inspect 20% of its apartments every year (which is required per city ordinance).  Those inspectors never informed WSE that any of its lines were uncapped or that caps were required by the code.  This evidence will not remove WSE's obligation to meet the code requirement.  Rather, we are hopeful that this sort of testimony will take any "heat" out of the case and keep the jury from getting upset at the defendants.[1]

Second, we will attempt to convince the jury that the gas was actually "turned on" by the Plaintiff himself.  As you are aware, there is no direct evidence of this fact.  Rather, Plaintiff's changing story suggests that he is being dishonest about his actions on the day of the explosion.  For example, Plaintiff told first responders that he "tried to light the water heater".  Plaintiff never mentioned the "mystery repairman" to investigators, family members or even in his Complaint.  It was not until Plaintiff's deposition that any reference was made to some stranger being left alone in Plaintiff's apartment.[2]

It is our hope that this strategy will result in the jury allotting some of the fault to Plaintiff.  Of course it is difficult to predict the percentage of fault that the jury will ultimately assign, and, as noted below, Plaintiff's current mental state may make the jury more reluctant to blame him.  If Plaintiff is apportioned fault in the amount of 50% or greater, he cannot recover.  We think apportionment to the Plaintiff in that amount is extremely unlikely, but there is a fair chance that Plaintiff will share some fault.

---

[1] WSE's maintenance manager testified that he understood the caps to be safety devices and, had he noticed any missing, would have been sure to have them replaced.  Thus, Plaintiff will argue that a reasonable property owner, armed with such knowledge, would have been sure to inspect for missing caps (regardless of whether they were a code violation or not).

[2] Plaintiff will contend that this "mystery repairman" is, in fact, WSE employee, Johnny Orr.  To support this assertion, Plaintiff will point to the fact that Mr. Orr pulled the keys to Plaintiff's apartment two days prior to the explosion, since an "emergency" work order was in place directing him to repair the apartment's HVAC unit.  Mr. Orr had these keys in his possession until after the explosion occurred (which is a violation of WSE key control policy), and he was working the days before and the day of the explosion.  While Mr. Orr denies he set foot in Plaintiff's unit, he does not recollect why he pulled the keys or his plan to address the work order.  On the other hand, the physical description Plaintiff gave of the "mystery repairman" at his deposition looks nothing like Mr. Orr.

LIBERTY 001257

**CONFIDENTIAL**



WEINBERG WHEELER
HUDGINS GUNN & DIAL
July 24, 2014
Page 3

II.   *Damages.*

   A.   Past and Future Medical Expenses:   We show that Plaintiff has incurred approximately $225,000 in past medical expenses. As for future treatment, we are aware of none. It is possible that Plaintiff will claim that he needs to see a voice therapist, but he has made no efforts to seek such treatment since the months immediately following the explosion. Plaintiff continues to treat with mental health professionals, but, for the reasons set forth below, we have not factored those potential bills into our analysis.

   B.   Pain and Suffering:   Past and future pain and suffering are compensable, and this form of damages is left to the "enlightened consciousness" of the jury. The good news is that Wells' physical injuries have essentially healed (with the exception of those addressed below). His chief complaints at this point are that his skin "does not fit" and that he gets tired more easily. However, these conditions do not seem particularly painful, and he is no longer going through any sort of burn treatment. Plaintiff's past pain and suffering is a different story. Plaintiff has produced a video depicting the treatment he received as a result of his burns. It is quite graphic and will make a strong impression of how painful Plaintiff's injuries were in the weeks following the explosion.

   C.   Physical Injuries:   Other than his more generalized complaints of lethargy, Plaintiff claims that he has lasting physical injuries in the form of scarring, erectile dysfunction and permanently damaged vocal chords. Physical injuries are compensable; and these will likely factor into Plaintiff's presentation to the jury.

   Regarding scarring, Plaintiff does have visible scars on his forearms and calves. However, the scarring is not that pronounced. His forearms, for example, show the "waffle" pattern of the skin grafts, but, other than that, are not very remarkable. Though he has claimed to have suffered scarring on his face, ears and neck, I have not seen any such scarring, and I have spent a considerable amount of time in his presence (during the depositions and at mediation).

   We are moving to prohibit any mention of Plaintiff's alleged erectile dysfunction, as we believe that there must be causation evidence, in the form of expert testimony, to support any such claim. Thus far, Plaintiff has not identified any such expert, and his own medical records indicate that his condition is caused by Peyronie's Disease. These same records demonstrate that the etiology of Peyronie's Disease is unknown. We feel fairly confident that Plaintiff's claim of erectile dysfunction will be prohibited, barring some late-identified expert on Plaintiff's part.

   As for Plaintiff's claim regarding his vocal chords, Plaintiff will produce a voice therapist, Jeannie Dollar, to testify that Plaintiff has lost a significant portion of his vocal range. Ms. Dollar will opine that, due to Plaintiff's scarred vocal chords, he will be unable to speak as he once did. Primarily, this means that Plaintiff cannot speak as loudly or as long as he did prior to the explosion. At the time Ms. Dollar testified, Plaintiff was employed as a teacher, and she stated that Plaintiff's position would lead to voice fatigue (since he was constantly talking to his

LIBERTY 001258

**CONFIDENTIAL**



WEINBERG WHEELER
HUDGINS GUNN & DIAL
July 24, 2014
Page 4

students). Her opinion may not be as relevant to Plaintiff's new position as a menial laborer. We will move to exclude Ms. Dollar's opinions, on the grounds that she is not a physician and should not be permitted to opine regarding the etiology, severity or duration of an injury. However, there is a fair chance said motion will be denied.

D.   Psychological Injuries:   Plaintiff is claiming to have suffered all sorts of emotional injuries as a result of the explosion. Wells testified that he has been diagnosed with PTSD, depression and anxiety, all stemming from the incident. As previously reported, Wells has a long history of at least two of these conditions – PTSD and depression – which he has dealt with for years. We are challenging Plaintiff's emotional injury claims via motion in limine for various reasons. Most notably, Plaintiff has failed to produce any medical records related to his diagnosis and treatment and has failed to identify any expert to opine that his current emotional state is causally linked to the explosion. Indeed, Plaintiff has objected to our procuring said medical records.

We feel very optimistic that Plaintiff will be precluded from testifying that he suffers from any diagnosable mental condition. Ultimately, however, Plaintiff will be able to testify regarding his own emotional state. Thus, he will be permitted to explain that he is withdrawn, lethargic, run-down, anxious, stressed out, etc. This will become part of Plaintiff's overall claim of pain and suffering.

Along these lines I would also note that, at his most recent deposition, Plaintiff did seem very emotionally fragile. I did not get the sense that he was faking his emotional state. He seemed to be "hanging by a thread", appearing extremely anxious, nervous and sad. This was very different than his demeanor at his first deposition and at mediation. Should he present the same at trial, I do not think the jury will have trouble believing this man suffers from various emotional symptoms, regardless of whether or not he is permitted to testify regarding a psychiatrist's diagnosis.

E.   Lost Income:   As you will recall, Plaintiff claimed (in his written demand and in discovery responses) to have lost income as a result of the explosion. However, after deposing his boss, we learned that he was a salaried employee who was never docked any pay for missing work following the explosion. Also, after a couple of months, Plaintiff had returned to working full time in his job as a teacher/IT technician at a local, private school. Thus, Plaintiff's lost income claim did not seriously factor into our evaluation of the case.

Recently, Plaintiff has made an attempt to revitalize his lost income claim after he voluntarily quit his school position at the end of last year. Wells will allege that he has lost earning capacity in that he is now unable to do the sort of work he did prior to the explosion. Essentially, Wells claims that the stresses of his position at McGinnis/Woods Country School became too much for him to handle. He stated that, immediately after the explosion and for some time after, he was focused on physical recovery – getting over his burns, regaining stamina, etc. After that, Wells claims that he began to notice increased anxiety. While he admits to having long suffered from PTSD and depression, the anxiety was new. He could not complete

LIBERTY 001259

CONFIDENTIAL



**WEINBERG WHEELER**
**HUDGINS GUNN & DIAL**
July 24, 2014
Page 5

his tasks at work, and the thought of having people depend on him caused tremendous stress. Wells testified that all he wanted to do was hide and he became agoraphobic. On the advice of a psychiatrist, he enrolled in intensive therapy. Since the therapy took place several times a week, he took medical leave from his job and eventually resigned altogether.

After several months of therapy, Wells concluded that he was able to re-enter the workforce. However, he did not want to return to the school. Wells states that he does not think he will ever be cut out for that sort of employment again. He claims that he would still be ill equipped to handle the stress of a teaching position. He now works in the garden/landscape center at Lowes, where he loads customers' cars and trucks. The position is full time, but most likely seasonal. Wells claims that has been told there is a slight possibility that he would be kept on after the summer, but it is not likely.

The obvious irony in all this is that Wells' current job is quite physical. He is on his feet and carrying heavy items. This would seem to be the sort of activity that Wells previously testified he was unable to perform. Recall, during his first deposition, Wells claimed that he was fatigued all the time and lacked the stamina he had prior to the explosion.

We have moved to prohibit Plaintiff from making his lost earning capacity claim, based on the lack of evidence of any permanent injury. To summarize our position, Wells has presented no evidence that he has suffered any permanent emotional injury which would cause him to be unable to achieve the same level of employment he previously held. As noted above, however, the Plaintiff will be able to testify about his own emotional state (in a non-expert fashion). It is likely that the judge will determine that such testimony is a sufficient foundation on which to base a claim of lost earning capacity. Thus, we expect the Plaintiff to be able to present some form of a lost earning capacity claim.

We would also note that, after deposing Mr. Wells, we contacted his former boss, the principal at the school where he was employed. She informed us that she was quite shocked at his resignation and that there was no indication, prior to his departure, that he was unable to meet his job requirements. We've also interviewed one of Mr. Wells' coworkers, who told us the same thing. We are attempting to get affidavits from these individuals to help us "lock in" their testimony should we call them at trial. While their anticipated testimony in this regard is very favorable, Mr. Wells' former co-workers are likely sympathetic to him and may try hard to put a helpful spin on their side of the story.

Plaintiff has not identified an expert economist. Thus, we anticipate that the lost wages claim presented to the jury will be quite simple. Plaintiff will likely explain what Wells made at the school and what he is making now and let the jury do the math. This discrepancy, however, is not tremendously large. In the last 3 years of his employment at the school, Wells' gross pay was right around $39,000. Wells testified that, at Lowes, he makes $10.58 an hour. Annualizing this amount comes to $22,006.40 – a deficit of around $17,000.00 a year. Plaintiff has also lost the benefits that his other position provided but, without an economist, it is unclear as to how Plaintiff will present the benefits as a portion of his lost income claim.

LIBERTY 001260

**CONFIDENTIAL**


**WEINBERG WHEELER**
**HUDGINS GUNN & DIAL**

July 24, 2014
Page 6

Plaintiff is currently 57. We anticipate that Plaintiff will testify that he plans to work at least to the "typical" age of retirement, which is 65 or even 67 years old. Thus, roughly speaking, Plaintiff will ask the jury for *a minimum* $170,000 in lost earning capacity (and probably closer to $200,000, factoring in some analysis of benefits). This number will likely increase dramatically, if Plaintiff argues that Wells' current position is seasonal and his prospects for future work spotty.

E.    Punitive Damages and Attorney's Fees:  Plaintiff's claim for punitive damages and "bad faith" attorney's fees survived summary judgment. However, we still do not factor them as a substantial threat in this case. At the summary judgment hearing, the judge noted that Plaintiff would have to come forward with more evidence than he has presented thus far for him to survive a directed verdict motion at trial. The judge's decision appears to be based upon Plaintiff's lawyer's concession that he would not mention punitive damages at opening or in his case in chief.

**III.    Revised Valuation.**

We have revised our prior valuation based on the most recent testimony and case developments. Previously, we stated that a verdict in the range of $700,000 to $1.25 million is possible, noting that apportionment may serve to reduce the award. However, given the facts that (1) Plaintiff will now advance a lost earning capacity claim (which will likely be more than $200,000) and (2) Plaintiff's frayed emotional state may make the jury less likely to assign blame to him, we believe the valuation of the case must be adjusted upwards. We think the likely range of verdicts in this case to be between $1.25 and $1.5 million. Of course, it is possible that a verdict on either side of this estimate might be returned as well. As for apportionment, we believe the likelihood of apportionment trends downward as the sympathy factor for the Plaintiff is increased. If Plaintiff presents at trial as he did at his most recent deposition, sympathy may be on his side.

We look forward to discussing this with you at your convenience.

Sincerely,

Christopher T. Byrd

CTB:lle
cc:     Y. Kevin Williams, Esq.
        J. Tyler Schermerhorn, Esq.

LIBERTY 001261

**CONFIDENTIAL**

**Simpson, Michele**

| | |
|---|---|
| **From:** | Mosseri, Miriam <Miriam.Mosseri@ACEGroup.com> |
| **Sent:** | Thursday, November 06, 2014 8:59 AM |
| **To:** | Simpson, Michele |
| **Subject:** | RE: TRIAL SETTING - Stephen D. Wells v. Asian Commons, LLC, et al./Claim No.: 5SCAS00152481 |

Sure.

Miriam Mosseri
Claims Director, Excess Casualty Claims
ACE North American, 10 Exchange Place, 9th floor, Jersey City, NJ 07302 T 201-356-5109
Miriam.Mosseri@acegroup.com I www.acegroup.com

-----Original Message-----
From: Simpson, Michele [mailto:Michele.Simpson@LibertyIU.com]
Sent: Wednesday, November 05, 2014 6:10 PM
To: Mosseri, Miriam
Subject: Re: TRIAL SETTING - Stephen D. Wells v. Asian Commons, LLC, et al./Claim No.: 5SCAS00152481

Miriam,

Can you and I chat briefly before the group call tomorrow morning?  9:30am?

Sent from my iPhone

On Nov 4, 2014, at 1:45 PM, "Mosseri, Miriam"
<Miriam.Mosseri@ACEGroup.com<mailto:Miriam.Mosseri@ACEGroup.com>> wrote:

I can do Thursday at 10am EDT

Miriam Mosseri
Claims Director, Excess Casualty Claims
ACE North American, 10 Exchange Place, 9th floor, Jersey City, NJ 07302 T 201-356-5109
Miriam.Mosseri@acegroup.com<mailto:Miriam.Mosseri@acegroup.com> I
www.acegroup.com<http://www.acegroup.com/>

From: Joe Cahill [mailto:jcahill@asianrg.com]
Sent: Tuesday, November 04, 2014 12:08 PM
To: Darin Collier; Byrd, Chris; Mosseri, Miriam; Faye Wall;
michele.simpson@libertyiu.com<mailto:michele.simpson@libertyiu.com>; Schroder, Mike
(Mike.Schroder@swiftcurrie.com<mailto:Mike.Schroder@swiftcurrie.com>);
Tre_Horton@swissre.com<mailto:Tre_Horton@swissre.com>
Cc: Williams, Kevin; Schermerhorn, J.Tyler; Coleman, Linda L.
Subject: RE: TRIAL SETTING - Stephen D. Wells v. Asian Commons, LLC, et al./Claim No.: 5SCAS00152481

Thursday works for Asian.

From: Darin Collier [mailto:dwcollier@worthingse.com]
Sent: Tuesday, November 04, 2014 6:13 AM
To: Byrd, Chris; Mosseri, Miriam; Faye Wall;
michele.simpson@libertyiu.com<mailto:michele.simpson@libertyiu.com>; Schroder, Mike

1

LIBERTY 001277

EXHIBIT
#56 ID
5/10/17

**CONFIDENTIAL**

(Mike.Schroder@swiftcurrie.com<mailto:Mike.Schroder@swiftcurrie.com>); Joe Cahill;
Tre_Horton@swissre.com<mailto:Tre_Horton@swissre.com>
Cc: Williams, Kevin; Schermerhorn, J.Tyler; Coleman, Linda L.
Subject: RE: TRIAL SETTING - Stephen D. Wells v. Aslan Commons, LLC, et al./Claim No.: 5SCAS00152481

Traveling Friday; Thursday is better for Worthing.

From: Byrd, Chris [mailto:CByrd@wwhgd.com]
Sent: Tuesday, November 04, 2014 8:58 AM
To: Mosseri, Miriam; Faye Wall; michele.simpson@libertyiu.com<mailto:michele.simpson@libertyiu.com>;
Schroder, Mike (Mike.Schroder@swiftcurrie.com<mailto:Mike.Schroder@swiftcurrie.com>); Darin Collier; Joe
Cahill (jcahill@aslanrg.com<mailto:jcahill@aslanrg.com>);
Tre_Horton@swissre.com<mailto:Tre_Horton@swissre.com>
Cc: Williams, Kevin; Schermerhorn, J.Tyler; Coleman, Linda L.
Subject: RE: TRIAL SETTING - Stephen D. Wells v. Aslan Commons, LLC, et al./Claim No.: 5SCAS00152481

I'm up for a team-wide call.  The 5th is bad for me, though.  I have a call in the morning and a depo in the
afternoon.  Does Thursday or Friday of this week work for everybody?

From: Mosseri, Miriam [mailto:Miriam.Mosseri@ACEGroup.com]
Sent: Friday, October 31, 2014 1:03 PM
To: Byrd, Chris; fjwall@worthingse.com<mailto:fjwall@worthingse.com>;
michele.simpson@libertyiu.com<mailto:michele.simpson@libertyiu.com>; Schroder, Mike
(Mike.Schroder@swiftcurrie.com<mailto:Mike.Schroder@swiftcurrie.com>); Darin Collier
(dwcollier@worthingse.com<mailto:dwcollier@worthingse.com>); Joe Cahill
(jcahill@aslanrg.com<mailto:jcahill@aslanrg.com>);
Tre_Horton@swissre.com<mailto:Tre_Horton@swissre.com>
Cc: Williams, Kevin; Schermerhorn, J.Tyler; Coleman, Linda L.
Subject: RE: TRIAL SETTING - Stephen D. Wells v. Aslan Commons, LLC, et al./Claim No.: 5SCAS00152481

Thank you Chris. I suggest we get on a call to discuss strategy. I am available all day on 11/5.

Miriam Mosseri
Claims Director, Excess Casualty Claims
ACE North American, 10 Exchange Place, 9th floor, Jersey City, NJ 07302 T 201-356-5109
Miriam.Mosseri@acegroup.com<mailto:Miriam.Mosseri@acegroup.com> |
www.acegroup.com<http://www.acegroup.com/>

From: Byrd, Chris [mailto:CByrd@wwhgd.com]
Sent: Friday, October 31, 2014 12:54 PM
To: fjwall@worthingse.com<mailto:fjwall@worthingse.com>;
michele.simpson@libertyiu.com<mailto:michele.simpson@libertyiu.com>; Mosseri, Miriam; Schroder, Mike
(Mike.Schroder@swiftcurrie.com<mailto:Mike.Schroder@swiftcurrie.com>); Darin Collier
(dwcollier@worthingse.com<mailto:dwcollier@worthingse.com>); Joe Cahill
(jcahill@aslanrg.com<mailto:jcahill@aslanrg.com>);
Tre_Horton@swissre.com<mailto:Tre_Horton@swissre.com>
Cc: Williams, Kevin; Schermerhorn, J.Tyler; Coleman, Linda L.; Byrd, Chris
Subject: TRIAL SETTING - Stephen D. Wells v. Aslan Commons, LLC, et al./Claim No.: 5SCAS00152481


All:

This case has been placed on a two-week trial calendar starting December 1st.  It is difficult to tell whether we
will actually go at that time, there are seven cases ahead of us.  It is possible we will start later in the week,
sometime the following week or that they won't get to us at all.  Of course, we will contact those in front of us to

2

LIBERTY 001278

**CONFIDENTIAL**

determine whether their cases are likely to settle.  Until we hear otherwise, we will need to prepare as though this case will be tried on December 1st.

Christopher T. Byrd

Attorney

WEINBERG WHEELER

HUDGINS GUNN & DIAL

3344 Peachtree Road NE

Suite 2400

Atlanta, GA 30326

404-832-9546 phone

404-875-9433 fax

VCARD<http://www.wwhgd.com/vcard-9.vcf>

www.wwhgd.com <http://www.wwhgd.com%20>

The information contained in this message may contain privileged client confidential information: if you have received this message in error, please delete it and any copies immediately.

This email is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, protected by the attorney/client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

3

LIBERTY 001279

**CONFIDENTIAL**

This email is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, protected by the attorney/client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

This email is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, protected by the attorney/client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

LIBERTY 001280

**CONFIDENTIAL**

Traige - sus reg sent to mgr for adjuster assignment

-----

Premise liability - BI loss - Sandy Springs, GA

------

Explosion in tenant's apartment due to uncapped gas line in laundry area.

Claimant sustained burns to over 60% of body. Eyelashes burned off and

extensive bruns to face and ears. He has 3rd burns to arms and legs

requiring skin grafts. Claimant demands $5MM.

-

We attach at $1MM

Updated: Z03FRAS1 04/24/13 17:31:40

Considering the potential severity of the damages and the $1m attachment

point this matter has been assigned to Miriam Mosseri on the complex team.

Updated: Z09MORJ2 04/25/13 14:09:47

Notice of loss came only with demand letter from plaintiff's counsel dated

3/19/13 addressed to defense counsel Christopher Byrd of Weinberg Wheeler.

The letter includes the following facts:

DOL: 5/31/10

Claimant: Steve Wells

Claimant lived in the Edgewater complex at Sandy Springs, GA. He was in the

process from moving from one apartment to another in the same complex.

Maintenance came in to fix the new apartment and when claimant reentered

that apartment an explosion occurred. Apparently gas valve was turned on

int eh apartment which claimant claims he was not aware of. Claimant was

severely burned. According to P's letter, the fire dept investigated and



Privileged and Confidential – Subject to Stipulation and Protective Order;
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

CH 2556

determined the explosion was result of an uncapped gas line int he laundry

area.

Claimant was burned over 60% of his body with 1st 2nd and 3rd degree burns.

He underwent surgery and spent 15 days in the burn unit.

P's letter makes a 30 day time-limited demand in the amount of $5M (this

time has now passed) consisting of the following breakdown of coverage:

$1M primary coverage for WSE - Axis insurance

$1M primary for Aslan (the insured) - Liberty

$3M in excess from defendants' umbrella coverage - Zurich and ACE.

POA: will contact insured, underlying and defense counsel to obtain more

information, was there a response to the demand, confirm involved parties

and coverages available. I will also pull my policy and investigate the

late notice issue.

Updated: Z03MOSM1 04/25/13 14:43:40

Reviewed and discussed with claim handler.   ███████████████████████

███████████████████████████████████ Fact that notice

came after time limit demand is concerning and clearly left us without any

opportunity to influence claim, accept demand, exert pressure etc. We need

to move quick so we can make an appropriate decision timely.

Updated: Z09STRR1 04/25/13 19:47:29

sent follow up request for the policy. Spoke with defense counsel Chris

Byrd of Weinberg Wheeler (404-832-9546). The Plaintiff's demand of $5M was

rejected and mediation took place a week ago and was unsuccessful. At

mediation plaintiff came down to $4.9M but indicated he would not settle

below $1M. DC thinks it will take between $1M and $2M to settle. I called

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,       CH 2557
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

the Liberty adjuster Michelle Simpson (212-208-9578) and left message -

need to verify coverage tower and also want her policy. Counsel advised

that we are still in discovery phase and there is no trial date. Although

we have a good defense theory - which is that plaintiff opened the gas cap

himself, there are still things that can come up in discovery and plaintiff

suffered serious injuries. Counsel thinks at the end of the day it will

probably be a damages case. Plaintiff incurred about $225K in meds so far

and has recovered pretty well. I asked counsel to copy me on all

correspondence going forward and provide me with copies of pleadings and

litigation reports that have been prepared for Liberty so far. ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Given that the demand was rejected,

mediation failed and the case is far from trial date, I dont think late

notice will be an issue.

Updated: Z03MOSM1 05/02/13 16:15:39

Late notice issue resolved. Continue f/u as planned. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮

Updated: Z09STRR1 05/10/13 16:16:02

counsel provided updated report - placed in Apollo - the following is a

recap on some of the important aspects covered in the report:

Liability/Damages:

As per counsel, Wells' has reached the limits of his physical recovery.

Thus, his medical bills should not increase much over what they currently

are.  There is a discrepancy, however, between the bills counsel has

retained (approx. $223,000.00) and what Wells recalls (over $250,000.00).

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

CH 2558

Counsel is working on obtaining all medical records to date. Wells

recently began seeing a psychologist or psychiatrist for his alleged PTSD.

Assuming he is being truthful about this new line of emotional treatment,

the amount of his medical bills may rise. Wells provided an itemization

of his property loss to his insurer, estimating the total amount at

$26,525.00. And, of course, Wells is seeking more ethereal pain and

suffering damages (both physical and emotional), which will be left

entirely up to the jury to determine.

Wells' was an invitee of Aslan; and thus, Aslan owed Wells a duty to keep

the The Edgwater premises in a reasonably safe condition. In addition,

WSE, in managing the apartment complex, did have a duty to carry out its

obligations in a non-negligent manner. The prosecution of Wells' case will

focus on the argument that failing to cap the gas lines in Apt. 1703 was a

breach of both Aslan's and WSE's duty which proximately caused Wells'

injuries. Our expert will testify that it is reasonable for the

maintenance employees to rely on the inspections of the certified building

inspectors which are mandated by the City of Sandy Springs pursuant to city

ordinance which was in 2007. Our only other liability defense is that

Wells was contributorily negligent because he opened the valve to the gas

dryer line while attempting to light his water heater. It is conceivable

that a jury will allocate some amount of fault to Wells as it seems the

mystery man is a fabrication of his own in an attempt to avoid liability.

Nonetheless, Plaintiff's counsel will argue that it was a WSE employee, not

Wells, who opened the valve. He will also argue that the reason the gas

line must be capped is in order to prevent exactly what happened in this

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

CH 2559

conversation between him and his urologist;  there is no evidence of the

cause of or treatment for the purported erectile dysfunction in the medical

records thus far.  Counsel has asked his counsel to provide whatever

additional records support Wells' opinion in this regard, and it seems

apparent that they have no such documentation at this point.  Plaintiff's

counsel has indicated that they will likely rely upon the testimony of the

urologist.  Thus, counsel is in the process of setting his deposition.

Likewise, Plaintiffs have failed to provide any medical records to

substantiate Wells' claim of being diagnosed with Post Traumatic Stress

Disorder after the explosion.  Counsel continues to seek Wells'

psychological records directly from his medical provider and may need to

depose Wells' psychologist/psychiatrist (if, indeed, he has one).

Plaintiff's counsel has recently informed us that he intends to make some

sort of lost income/earning capacity claim.  Wells has already testified

that he was not docked any pay for the time he missed from work.  Thus,

this claim appears to be based upon (1) the fact that Wells may have used

vacation days as he was recovering to avoid having his pay cut, and (2) the

allegation that, though he continues to work at the same job and rate of

pay, Wells is nevertheless impaired and his chances of

advancement/alternate employment are limited.  Counsel is scheduling the

deposition of the principal at Wells' school to discuss this very topic and

have asked Plaintiff's counsel for a detailed accounting any such claim.

The report does not contain a settlement evaluation or jury verdict search

- I will ask counsel to opine on those points - although based on what I

see thus far, the evaluation should remain the same.

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,      CH 2560
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

Updated: Z03MOSM1 07/01/13 16:42:31

Stay after DC as noted for current eval. ██████████████████████

██████████████████████

Updated: Z09STRR1 10/21/13 16:59:30

counsel advised an updated litigation report will be distributed next week.

In the interim he advised they had depos of Well's speech therapist and

WSE's corporate representatives. Counsel also had informal discussions with

P's counsel about the numbers previously negotiated. P's counsel indicated

that he would drop to $3 million if we were to go to $1 million. He then

said he didn't know if he would ultimately settle closer to our number or

his, but that this bracket would be a start. DC instinct is that he will

settle for less than $2M - possibly much less but he is definitely hung up

on getting at least $1M. I will wait for counsel's report and will then

prepare CLR accordingly. ██████████████████████

██████████████████████

Updated: Z03MOSM1 11/06/13 20:51:51

although counsel provided a report, it didn't include his evaluation. It

did, however, indicate that verdict range can potentially be anywhere

between $750K and $1.25K. Plaintiff's counsel, however, is unwilling to

mediate this case until there is $1M on the table from Liberty. Liberty is

not willing to do that and I told counsel Im not in agreement for Liberty

to put up the limit anyway since I think the case is valued under the $1M.

Counsel is filing motions for SJ of various reasons. First, for punitives

and attorney fees and then also for Aslan since they were the property

owner and had nothing to do with running the facility - WSE wa the

Privileged and Confidential -- Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

CH 2561

management company and they ran the facility - there is a good chance these

motions will be granted. I looked back to the policy - need to look at

punitive damages and see if letter needs to go out on that and also whether

WSE is an additional insured on our policy (they are on Liberty). What

happens if Aslan gets out and WSE remains? WHen I looked in Apollo, turns

out I don't have the complete copy of the policy. I sent an urgent request

today for complete copy of the policy and will explore those 2 issues.

Updated: Z03MOSM1 12/12/13 19:44:47

policy not yet received - called Ms. Parker and put in rush request - once

received need to review the covered entities and how MSJ will affect and

also need to look at punitives.

Received message from counsel today that we were placed on a trial calendar

for January 21.  We are in position five (out of five) for a one week

stack. The trial setting was a bit of a surprise.  There is a discovery

motion pending (we've moved the court to compel the Plaintiff to produce

his Facebook information), and, obviously, we wanted the Court to rule on

that motion and provide us with time to follow up on whatever was produced.

 The clerk previously informed us that we would be set for a hearing on

the motion to compel in mid-January at the latest. As such, counsel we will

 move the Court for a continuance to allow time for the discovery motion to

 be heard and some brief follow up.

conference call with counsel and underlying carrier being scheduled for

today.

Updated: Z03MOSM1 01/02/14 15:39:36

Had group call: trial date will most likely be moved to April - we will

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,                    CH 2562
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

have a set date next week.

DC is contemplating filing Motion to dismiss for Aslan - good argument to

get them out - In GA if you own a property and don't do the day to day

operations, you are an absentee owner and cant be held liable to keep

premises safe. But what happens to WSE? If Aslan gets dismissed will WSE

have coverage? Liberty is reviewing and have not given a definitive answer.

Im still waiting for a complete copy of my policy (which I asked for it

again today). ██████████████████████████████████████

████████████████████████████████████ I also

asked Liberty adjuster to send me copy of her policy.

Updated: Z03MOSM1 01/02/14 20:30:53

placed another urgent request for my policy

Updated: Z03MOSM1 02/14/14 14:57:23

Received my policy - ███████████████████████████

███████████████████ I will also follow up with Liberty for

copy of their policy and DC as to the motions and status.

Updated: Z03MOSM1 02/18/14 16:02:51

Sent another follow up request to Liberty for their policy. ██████████

████████████████████████████████████████

████████████████████████████████████████

████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

CH 2563



Liberty adjuster Michele Simpson told us over the phone on last conference
that they are insured under her policy, however, I need a copy of her
policy to confirm. Sent her an email following up on my request.

Also, I called and left a message for defense counsel - need status and is
there a new trial date? was MSJ filed? Will discuss evaluation again and
see if we can get negotiations moving again.

On punitives: since we are not sure whether GA or CA law will apply, and
since the two jurisdictions are opposed on their view of recovery of
insurance for punitive damages, I will draft a letter reserving on this
issue.

Updated: Z03MOSM1 03/13/14 20:56:28

status from DC:

1. Both sides have filed motions for summary judgment.

2. We will be having a telephonic conference on Defendants' pending motion
  to compel (re Plaintiff's Facebook account). We are hopeful that the
  judge will order Plaintiff to produce at least some of his post-incident
  Facebook postings.

3. we filed a notice of non-party at fault, asking the Court to permit the
  jury to apportion fault to (1) the "mystery" repair man, and (2) the City

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,     CH 2564
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

of Sandy Springs (and its building inspector). We've never had much faith

in our ability to apportion to Sandy Springs or the building inspector,

since there is no evidence that the inspector ever came across an uncapped

line. As expected, Plaintiff has moved to strike our notice. Counsel

believes the best course is to withdraw the notice - here's why:

Regarding the "mystery man", our argument at trial is going to be (and the

evidence supports it) that there was no mystery man. Rather, Wells turned

on his gas, and the mystery man is a lie to cover his tracks. Originally,

my idea regarding having the mystery man on the verdict form was to enable

us to make the alternative argument: "If Plaintiff is right and some guy

came in an turned on his gas, he hasn't proved it was us; so, you can

apportion fault to this stranger." However, this argument may prove

confusing to the jury. Since we are going to allege there was no mystery

man, it is probably wiser to not take what the jury might construe as a

contrary course of action (or a course of action that Pete Law can claim is

contradictory) by having the mystery man on the verdict form.

Regarding the City of Sandy Springs, there is really no way for us to prove

that they did anything wrong. Certainly, it appears that they were not

looking for capped gas lines as part of their inspections, but there's no

evidence that they actually overlooked a code violation. In other words,

there is no evidence that they inspected an apartment that had an uncapped

line at the time of the inspection. Since the Defendant bears the burden

of proving liability to permit apportionment, we believe that Plaintiff's

lawyer would highlight our inability to prove Sandy Springs' liability to

our disadvantage.

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,    CH 2565
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

For these reasons, we feel that, rather than oppose the motion to strike,

we should simply withdraw our notice of non-party at fault.  We would still

be able to argue that Wells turned on his own gas and that the mystery man

doesn't exist.  Also, we will still be able to explain WSE's reliance on

Sandy Springs' inspections as evidence of our reasonable behavior.

4.  We have no new trial date as of yet.  If the judge orders that some

information be produced per the motion to compel, he would probably also

wait at least a couple of months before setting this matter for trial.

Otherwise, counsel expects the case to be set in short order after the

judge rules on the pending dispositive motions.

Updated: Z03MOSM1 03/14/14 16:38:26

spoke with DC:

Cross motions for SJ pending. Judge granted our motion to compel - Wells FB

information but not much in there. Just some meesages he is saying he was

feeling ok. Judge denied our motion to go into FB account so we don't know

if we have the entire thing. Tried to set date for the SJ hearig - didn't

get anywhere on that.

We didnt file MSJ on getting management company out. It was agreed to leave

management company in but we are not worried about it for trial - there is

nothing to attribute fault on them and plaintiff has not even deposed

them.

Basis of SJ: no evidence on when the line became uncapped - could have been

months or days before explosion, We are saying plaintiff needs to prove we

had a hand at having it uncapped and they cant show we are actually

negligent. They have to claim res ipsa loquitor and they cant to do so

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,    CH 2566
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

because it wasn't in our exclusive control. They are looking for SJ

affirming the negligence and requesting a damsges trial. Chances are judge

wil deny both and we'll proceed to trial. In our reply, however, we raise

other issues such as no evnidetniary support on loss wages, erectile

dysfunction and post traumatic stress - we have a good chance to get those

claims out - plaintiff has no evidence to support those claims.

Settlement evalution - plaintiff has $300K in meds, completely recoevered,

no support for erectile dysfuntion or post traumatic stress. He has some

scarring and weakened voice. His condition is not bad. Multiply by $300M by

3 - about $900K. Range for verdict is $750 to $1.25M. But counsel thinks

we have a good shot at getting this reduced because we have good evidence

that he closed his own gas. How much fault they assign to him is anoyeone

guess. First thing he said to MES personeel is that he tried to close the

water heater. GA - comparative negligence, If he gets 50% or greater, he

doesn't receoveer at all. We'll defintely get something off the verdict

question is how much. If verdict is likely around $1M, with  some fault

attributed to plaintiff, we may end up at $500K to $750K verdict.

Last demand - $5M (pre-mediation). Plaintiff will not mediate again until

$1M is on the table. Liberty is not prepared to do so because settlement

evalatuion is under $1M.

Punitives are alleged. They are in the SJ motion and we have over 60%

chance of success. They have to show malice - its more than gross

negligence and there is no evidence.

I called and left message for the Liberty adjuster : Michelle Simpson -

212-208-9578 - I wan to discuss possibilty of focus group with her - I

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,    CH 2567
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

think this is a good case to do so to see how jury will react to our

arguments.

Updated: Z03MOSM1 03/17/14 18:16:58

update:

1. The hearing on the cross MSJs has been set for May 29th.

2. Plaintiff has recently amended his prior discovery responses with two

substantive changes

First, Wells is now claiming to have quit his job due to his emotional

state. We deposed Wells' principal a while ago, and, at the time, she was

very complimentary of him. Wells received every raise he was due, and she

had no complaints about his job performance. Also, his employment records

demonstrated that, within a few months after the explosion, Wells had

returned to and maintained a full time schedule. Regardless, Wells now

contends that the stress of his school job was too much. He's begun

working part-time at Lowes. This means Plaintiff will likely attempt to

place some numbers on a lost income claim, though they've yet to do that.

Obviously, we will want to re-depose Wells on this change of story. We may

also want to re-depose his principal

Second, Wells has apparently seen additional providers related to his claim

of emotional distress. He has always maintained that he suffered PTSD as

a result of the explosion (a diagnosis which he had also been given prior

to the explosion related to other drama in his life), but he maintained an

objection to us gathering those records. Now he's claiming to have seen

additional doctors. DC does not yet know if Plaintiff is going to produce

actual records related to these visits, but will push for them (or ask the

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

CH 2568

court to dismiss any PTSD claim for lack of evidence - which we've already done).

DC is following up with Plaintiff's counsel for more specifics regarding the above. This will probably translate into slightly higher past medical bills, but also some claim of lingering emotional damages (to contribute a claim of future pain and suffering and possible future medical treatment).

Left message for UL adjuster Michele Simpson - made several requests for her policy an dhave not yet received it. Also want to discuss strategy with her and see if she will consider focus group at this point.

Updated: Z03MOSM1 04/25/14 14:46:59

Draft reservation letter on punitive daamges sent to the broker today.

Updated: Z03MOSM1 05/12/14 20:42:30

coverage letter issued to insured today.

Updated: Z03MOSM1 05/21/14 21:12:29

update from DC:

1.  We've deposed Wells to get to the bottom of his income claim.  You'll recall that his counsel announced that he had to recently quit his job as a teacher/IT tech at the private school with which he was employed.  Wells testified that he had to do this for psychological reasons.  According to him, the stress of his job became overbearing.  He couldn't face it anymore.  The psychologist he was seeing at the time recommended that he go into some intensive outpatient psychological counseling, which he did.  He took a leave of absence from his job and began going to counseling sessions several times a week.  His sessions grew less frequent after about

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

CH 2569

a month, but he continued to go.  Finally, he decided that he would not be

able to go back to work at the school, and he officially quit.  He then

took a job at a local Lowes, where he helps people load landscaping

materials into their cars/trucks. Wells says that this job is far less

stressful. Wells testified that he was told his job at Lowes is seasonal,

but that there's a chance a few seasonal employees may be kept on after the

summer.  So, it's not clear how long Wells will stay at Lowes.  He has no

benefits from his job at Lowes and he makes around $12 an hour.  Thus,

annualized, he's making around $25K a year.  This isn't a heck of a lot

less than he made annually at the school - which was gross $38K.  We will

attack Well's claim with a reworked MIL.  Notably, Wells admitted that he

psychological stressors he was facing stemmed from problems which pre-dated

the explosion (which he claims were made worse).  We will argue that Well

did not lose earning capacity due to the explosion.  Rather, he chose to

quit his job.

2.  We had the hearing on the Motions for Summary Judgment.  Both sides'

motions were denied.  Notably, however, the Judge was vocal about his

leanings towards dismissing Plaintiff's claims for punitive damages and

attorneys' fees.  The Plaintiff's lawyer told the judge that he would not

mention punitive damages at all during the trial, and this lead the judge

saving the claims for now.  So, as it stands, Plaintiff will not mention

punitive damages or bad faith attorneys' fees in his case in chief.  We

will be free to move for directed verdict on these issues at trial, and the

judge made it clear that, unless Plaintiff comes up with more than he's

seen so far, he'd likely grant such a motion.  The judge refused to rule on

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

CH 2570

more focused issue of Plaintiff's economic loss and claims of erectile

dysfunction and psychological injuries.  Rather, he focused on the larger

motions.  We will re-raise those issues in motions in limine.

3.  There is no trial date, but it wouldn't surprise me if we get placed on

a trial calendar in the next couple of months.  It just depends on when

the Court gets around to doing it.

Updated: Z03MOSM1 06/13/14 18:12:55

Trial has been set for December 1st, 2014. I sent DC request to set up a

group call to discuss strategy.

In his July 24, 2014 status report, DC provides as follows:

Medicals: Plaintiff incurred approximately $225K and there is no indication

of future treatment. Past and future pain and suffering are comensabe but

his physical insjuries have essentially healed.

Plaintiff does have some visible scars on his forearms and calves nor

remarkable.  NO scars to face.

DC is moving to prohibit any mention of P's alleged erectile dysfunction as

we believe there must be causation evidence in the form of expert

testimony to support such claim and plaintiffs have not identified such

expert and his own medical records indicate that his condition is cause by

Peyronie's disease. THese records demonstrate that the etiology of

Peyronie's Disease is unknown - DC is fairly confident that this claim will

be prohibited.

P claims PTSD but he has had a long history of PTSD and depression. DC will

be challenging this claims via motions in limine for various reasons: P

has failed to produce any medical records related to this diagnosis and

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

CH 2571

treatment and has failed to identify any expert to opine that his current emotional state is causally linked to the explosion. Infact, plaintiff has objected to our procuring said medical records.

In his most recent deposition, however, p did seem emotionally fragile. He was anxious, nervous and sad. THe jury will probably believe he suffers from various emotional symptoms even if he is not permitted to testify regarding a psychiatrist diagnosis.

Lost income: although he claims to have lost income, he was a salaried employee who was never docked any pay from missing work after the explosion. Also, he returned to work as full time teacher/IT tech at a private school several months after the DOL. He recently tried to make an attempt to revitalize his lost income claim and voluntarily quit his job claiming it was too stressful for him. But his current job is a very physical one - he is on his feet carrying heavy items at Lowes even though at his first deposition he claimed he was fatigued all the time and lacked stamina after the explosion. His former boss, the principal at the school was shocked at his resignation as she claimed that he was doing well - all his co-workers said same.

P has not identified expert economist. It will probably be around $200K. He is now 57.

In his July 24th report, DC revised his valuation based on recent testimony. A likely range of verdict is between $1.25 and $1.5M. This is not settlement evaluation. On settlement, I dont think this warrants more than the UL $1M.

Updated: Z03MOSM1 11/03/14 16:35:34

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

CH 2572

I have retained Mike Frick of Hall Booth to monitor the trial as appellate

counsel.

Updated: Z03MOSM1 11/23/14 15:04:31

Trial got pushed to January 12th.

Liberty offered a bracket of 400/900 in response to plaintiffs proposal of

1 mil/3 mil.

Pete law responded with a high/low proposal of 900/9 mil.

Had conference today with defense counsel, Liberty and Mike Fric. If we

agree to a high low at trial, we preserve all rights on appeal and

post-trial motions

It was agreed we will present a high low of $250K and $1.2M

Updated: Z03MOSM1 12/09/14 19:28:54

In response to our high low of $250K and $1.2M, plaintiff's counsel

responded with $800K and $8M. Next move contemplated at high low of $350K

and $1.3M. Sent manager note requesting authority.

Updated: Z03MOSM1 12/16/14 18:15:53

following discussion with manger, I authorized next move of high low of

$350K and $1.25M. An agreement of high-low will not waive any appellate

rights.

Updated: Z03MOSM1 01/02/15 15:54:22

P's counsel didn't want to continue discussions on high low. On sunday

afternoon (one day prior to trial) I got a call that Liberty was tendering

their $1M. I called P's counsel. He is not interested in anything less than

$3M to settle. I advised him that I have the $1M and advised I may be able

to do a little more on top of that but in no way it will be close to $3M.

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,   CH 2573
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

Our DC's evaluation o on likely verdict is between $1.2M and $1.5M. Trial beginning today.

The following is DC's outline of the motions in limine that were decided on Friday:

1. The fact that over 50 other apartments were found (after the explosion) to have dryer lines with no caps (and were subsequently capped) will come in. Such evidence goes to notice, existence of a defect and there is law that states that, where a state agency requires an action, such an action is not excludable as a subsequent remedial measure.

2. Plaintiffs attempted to exclude the EMT statement that Wells told her "I tried to light the water heater" on hearsay grounds. That statement will come in as recorded recollection.

3. We argued that the court should not permit Plaintiff's counsel to argue that apportionment to Wells will reduce the amount of any award he receives. The judge ruled against us, noting that he typically informs the jury of the effect of apportionment. Plaintiff's lawyer will be free to argue that that every percentage point of fault assigned to his client reduces the award (I would expect the argument to be phrased as "apportioning fault to Plaintiff gives defendants a 'discount'") and he will be able to also stress that assigning 50% to Plaintiff would result in no recovery at all.

4. Jeannie Dollar's testimony (the voice therapist) will be allowed. Thus, the jury will hear that Wells has a permanent voice deficit. Along those same lines, Plaintiff will be able to inform the jury that he has erectile dysfunction and that he suffers from PTSD/depression. He will not, however,

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

CH 2574

be able to testify as to any doctor's diagnosis. We, in turn, can bring up

the fact that he has been diagnosed with PTSD/depression in the past.

Also, we will be able to point out that Well's ED is caused by Perrone's

disease.

5. As for Plaintiff's claims of permanent disability/injury, Plaintiff's

lawyer informed the court that he has no intent to argue that Wells will be

unable to work at the pre-explosion level for the rest of his life.

Rather, he will say that Wells cannot now work at that level and he does

not know when or if he will be able to return. Plaintiff's lawyer said he

does not intend to "blackboard" a lost income number. He is going to leave

it up to the jury.

6. Plaintiff attempted to keep us from arguing that Wells turned on his own

gas. That motion was denied.

Updated: Z03MOSM1 01/12/15 14:41:42

Miriam has downloaded the daily trial reports in to Apollo. please see same

for reports.

Updated: Z15WALP1 01/18/15 15:59:17

Aslan is bare above us. Codefendant has $1M with Axis and $20M with Zurich.

██████████████████████████████████████████████████

███████████████████████

Updated: Z15WALP1 01/18/15 15:59:41

VERDICT REPORT

On January 15, 2015 a Fulton County (GA) jury rendered an adverse verdict

in this matter in the amount of $72.9. said verdict includes punitive

damages which are capped in Georgia at $250,000. The verdict also include

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,       CH 2575
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

attorney fees, the collectability of which is in dispute with two cases

currently before the Georgia Supreme Court. The verdict breakdown is as

follows:

| | |
|---|---|
| $17,900,000 | Compensatory damages |
| $ 7,100,000 | Attorney fees |
| $47,900,000 | Punitive damages |
| $72,900,000 | Total jury verdict |

The compensatory award plus the collectible punitive damages award is

$18,150,000. On 5/21/14, we reserved our rights as to punitive damages

potentially not being covered under the Ace policy. (Georgia generally

allows for punitive damages to be insurable.) There are a number of

appellate issues which will be discussed below. Note that the jury did not

allocate liability between the defendants. They assigned 100% liability

against the defendants.

ACE Property and Casualty Insurance Company (ACE USA) provides $10,000,000

each occurrence/aggregate coverage to Aslan Realty Group, LLC. The ACE

limits are excess of a $1,000,000 primary limit provided by Liberty Mutual.

The defendant Aslan Commons, LLP is a named insured pursuant to

endorsement 12. The defendant WSE, the managing agent, is an insured by

definition. (WSE's carrier is on notice of this matter.) Both Aslan and WSE

were defended under the Aslan policies.

The plaintiff was a tenant at an apartment complex owned by Aslan Commons,

LLC and managed by WSE, LLC. He was moving from one apartment in the

complex to another. The new apartment included a laundry room with a

natural gas line terminating in a nozzle to which a dryer could be

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

CH 2576

attached. The gas line was controlled by a valve located in the apartment's

utility closet (which included a gas hot water heater. To open or close

the valve, a wrench or pliers is needed. The gas line nozzle in the laundry

closet was not capped as required by code. Plaintiff alleges that gas

escaped from the nozzle in to the apartment and that upon his re-entering

the apartment (he was in the process of an "early move-in") the gas was

ignited sending a fireball through the apartment and resulting in his

sustaining burns. There is conflicting testimony as to whether or not a

"handy man" entered the apartment to work on the HVAC unit while plaintiff

was away from the subject apartment or whether plaintiff worked on the hot

water heater. The post-fire investigation found the valve in the open

position.

Plaintiff sustained burn injuries and scarring to his forearms and calves

with lesser scarring (not readily visible) to his face, ears and neck. He

had claimed erectile dysfunction as a result of the catheterization during

his burn therapy but subsequently agreed that the burns did not cause his

ED. He claims damage to his vocal chords and resulting hoarseness.

Plaintiff also claims depression, PTSD and anxiety disorder but had been

previously diagnosed with both depression and PTSD prior to the accident.

[Plaintiff wears a hearing aid and had difficulty at trial hearing

everything. While he didn't connect a hearing loss to the explosion, his

family members did.] Plaintiff's past medicals are approximately $226K and

property damage of approximately $27K. Plaintiff was a teacher and returned

to work (he did not loss any salary as a result of the time missed from

this accident). He worked for 3 years before voluntarily quitting. His

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,    CH 2577
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

claim is that he can no longer handle the stress of teaching and is now

working at Lowes. He claims a loss of earning capacity (with diminished

benefits) of approximately $200K. His work at Lowes is physical and

includes loading customer's cars and trucks.

Appellate counsel (Michael Frick of Hall Booth Smith) opines that there are

three major appellate issues. The first issue is the trial judge's failure

to grant a directed verdict to exclude erectile dysfunction and the

partial hearing loss as damages. The defense was looking for the judge to

advise the jury that these conditions were not damages being sought by

plaintiff. Since the damages are not broken down by injury, the appropriate

appellate relief would be a new trial. Frick believes that we have a

better than 50% chance of success.

The second issue is the combined punitive damages and attorney's fees issue

and the judge's failure to grant a directed verdict for the defense on

those issues. Gross negligence is not sufficient for punitive damages,

there must be an intentional act. Since even plaintiff counsel acknowledged

no evidence of intent before the accident (plaintiff attorney alleges an

intentional act post-accident involving the disappearance of the valve but

that should not be applicable) and the judge acknowledged it was a weak

case, the motion should have been granted. Additionally, the attorney's

fees should only be granted where a defendant is being "stubbornly

litigious". Again, no evidence and the motion should have been granted.

Appellate counsel believes that the judge thought the jury would not award

punitive damages or attorney's fees. Appellate counsel believes that a

post-verdict motion is likely to succeed and, if not successful, there is a

Privileged and Confidential -- Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

CH 2578

better than 50% chance of success at the trial level.

The third issue is the alternative juror deliberating for 1 hours with the jury even though the juror should have been sent home after closings and the charge. Unfortunately, this error is not considered a problem in civil cases and the proper cure for same was followed by the judge. That is; the judge met with the alternate and determined that she had, in fact, taken an active part in the deliberations rather than merely listening in and then the judge called in the jurors and asked if they could continue their deliberations without regard to any input from the alternate. Since all said they could, the error was cured. Appellate counsel believes that the trial judge may be embarrassed by this faux pas (he has been on the bench for approximately one year) and might order a new trial. However, he is not confident that this will happen and on appeal opines that it is not a strong argument with a very low chance of success but should still be raised for its cumulative effect.

Lastly, appellate counsel raises the issue of apportionment. Georgia's comparative fault statute states that if a plaintiff is 50% at fault he or she does not collect. Some years ago, Georgia tort reform allowed for a separate apportionment process wherein non-parties could have liability assessed against them. Thus, the defense bar argues, the jury deliberates on liability and apportion faults among all identified parties and non-parties assigning percentages that add up to 100%. The jury then calculates damages, if any and presents the apportioned liability percentages and the damages amounts to the judge who then fashioned the verdict. If the plaintiff is found to be 50% at fault, the judge then

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

CH 2579

applies the comparative statute and finds against plaintiff.

In this case, the judge rejected the defense position and included in the verdict form a charge that if the jury found plaintiff 50% (or more) at fault, then plaintiff would not collect. We would argue that this was prejudicial and tainted the deliberations. Although appellate counsel opines that the error may not be important since the jury found 100% against the defendants. However, there may be some cumulative effect to be had if raised on appeal.

Updated: Z15WALP1 01/18/15 16:01:27

Privileged and Confidential – Subject to Stipulation and Protective Order:
ACE Prop. & Ins. Co. v. Liberty Surplus Ins. Co., et al.,   CH 2580
U.S. District Court for the Northern District of Georgia, Case No. 1:15-CV_0949-WBH

Claim: SSCAS00015Z481

# Workplan

St. Open | Pol: DGLSF209149100 | Ins: ASIAN REALTY GROUP, LLC | Clmt: Steve Wells | Policy Effective Date 04/01/2010 | Policy Expiration Date 04/01/2011 | D&L 05/31/2010 | Handler Adam Lippman (LIU Primary Casualty 5)

| ☆ | Due | Priority | Status | Subject | Exposures | Ext Owner | Assigned To |
|---|---|---|---|---|---|---|---|
| | 10/20/2015 | High | Open | Update LLR - closing? | | | Adam Lippman |
| | 09/22/2015 | Normal | Open | DJ - 30 day diary | | | Adam Lippman |
| | 09/22/2015 | Normal | Open | Review claim - signed release? | | | Adam Lippman |

# Loss Details

Details

**Loss Details**
Insured            ASIAN REALTY GROUP, LLC
Claim Title        GA-Premises-Owner-BI-Fire
Claim Description  GA-Premises-Owner-BI-Fire

**Claim Status**
Status             Open
Proceedings
Severity
Flagged            Under Investigation

**Claims Handling**
Handled by TPA/LIU
Handling Type
Special Claim Permission

**Loss Coding**
Loss Code Group    Casualty
COL1               Fire Hostile
COL2
COL3

Page 1

**CONFIDENTIAL**

09/18/2015 09.23 AM
**LIBERTY 000925**



PENGAD 800-631-6989
EXHIBIT
#44
5/16/17

Claim: 55CAS000152481

St. Open | ▼ | Pst: DGLSF209149100 | Ins. ASIAN REALTY GROUP, LLC | Clmt: Steve Wells | Policy Effective Date 04/01/2010 | Policy Expiration Date 04/01/2011 | DoL: 05/31/2010 | Handler: Adam Lippman (LIU Primary Casualty 5)

Type
Cat Code
Event Code

**Recovery**                                          Premises

**Date of Loss / Date Reported**
Date of Loss                         05/31/2010
Claim Type                           Claim
Date Received by LIU                 06/03/2010
Date Reported/Event                  06/03/2010

**Coverage Indicator**
Coverage Indicator

**Loss Location**
Country
Address 1                            Georgia
Address 2
Address 3
Address 4
Address 5
City
Region
Postal Code
Location Code

**Reported By**
Name                                 FULCRUM INSURANCE PROGRAMS
Role                                 Broker/Agent
Reference

**CONFIDENTIAL**

Page 2

09/18/2015 09:23 AM

**LIBERTY 000926**

Claim: 5SCAS000152481

St. Open | Pol: DGLSF209149100 | Ins: ASIAN REALTY GROUP, LLC | Clmt: Steve Wells | Policy Effective Date 04/01/2010 | Policy Expiration Date 04/01/2011 | DoL: 05/31/2010 | Handler Adam Lippman (LIU Primary Casualty 5)

11235 SE 6TH STREET SUITE 220 BELLEVUE, WA 98004

Address
Email
Telephone

## Storage

Date Shipped to Storage
Storage Type
Box #
Storage Notes
Record Retention Date
Destruction Date

## Associations

## Exposures

| # | Type | Claimant | Currency | Coverage | Adjuster | Status | Vol | Description |
|---|------|----------|----------|----------|----------|--------|-----|-------------|
| 1 | Bodily Injury | Steve Wells | USD | General Liability | Adam Lippman | Open | | |
| 2 | General | ALAE-BI | USD | General Liability | Adam Lippman | Open | | |

## Contacts

| Name | Contact Group | Roles | Address | City | State/Province | ZIP Code |
|------|---------------|-------|---------|------|----------------|----------|
| AccuTran, Inc. | | Check Payee | 2500 Dallas Highway | Marietta | Georgia | 30064-7505 |
| ALAE-BI | | Claimant | | | | |
| ASIAN REALTY GROUP, LLC | | Insured | 20 PACIFICA STE 450 | IRVINE | California | 92618 |
| Asian Commons LLC | Other | Other, Recovery Payer | 20 Pacifica Suite 450 | Irvine | California | 92618 |

NA

Created for Exp

CONFIDENTIAL

09/18/2015 09:23 AM

LIBERTY 000927

Claim: 5SCA500015248

St. Open | Pol: DGLSF209149100 | Ins: ASIAN REALTY GROUP, LLC | Clmt: Steve Wells | Policy Effective Date 04/01/2010 | Policy Expiration Date 04/01/2011 | DoL: 05/31/2010 | Handler Adam Lippman (LIU Primary Casualty 5)

| Name | Contact Group | Roles | Address | City | State/ Province | ZIP Code |
|---|---|---|---|---|---|---|
| Carolann Saenz | | Check Payee | c/o Sun Realty | Naples | Florida | 34103 |
| Chris Shiver, PE, LLC | | Check Payee | 2300 Holcomb Bridge Road | Roswell | Georgia | 30076 |
| FULCRUM INSURANCE PROGRAMS | | Broker, Reporter | 11235 SE 6TH STREET SUITE 220 BELLEVUE | Washington | Washington | 98004 |
| Gray, Rust, St. Amand, Moffett & Brieske, LLP | Legal | Check Payee, Coverage Counsel | 950 E. Paces Ferry Rd. | ATLANTA | Georgia | 30326 |
| Allen Hansen | | Underwriter | | | | |
| Hawkins, Parnell, Thackston & Young, LLP | Legal | Check Payee, Check Recipient, Defense/Defence Counsel | 4000 SunTrust Plaza | Atlanta | Georgia | 303083243 |
| Henning Mediation & Arbitration Service, Inc. | Legal | Check Payee, Mediator/Arbitrator | Henning Mediation & Arbitration Service, | ATLANTA | Georgia | 30339 |
| Legal Technology Services, Inc. | Consultant | Check Payee, Consultant | 4470 Atlanta Highway | Loganville | Georgia | 30052 |
| Peter A. Law, PC and Steven Wells | Legal | Check Payee, Claimant's/Plaintiffs Counsel | 563 Spring St NW | Atlanta | Georgia | 30308 |
| REEVES INVESTIGATION LLC | Other | Check Payee, Other | REEVES INVESTIGATIONS, LLC | SUWANNE | Georgia | 30024 |
| Thompson, Coe, Cousins & Irons, LLP | Legal | Check Payee, Coverage Counsel | 700 N. Pearl St. | Dallas | Texas | 752012825 |

CONFIDENTIAL

09/18/2015 09:23 AM

LIBERTY 000928

Claim: 5SCAS00015246.1

St: Open | ⚑ | Pol: DGLSF209149100 | Ins: ASIAN REALTY GROUP, LLC | Clnt: Steve Wells | Policy Effective Date 04/01/2010 | Policy Expiration Date 04/01/2011 | Dol: 05/31/2010 | Handler Adam Lipman (LIU Primary Casualty 5)

## Policy: General

| Name | Contact Group | Roles | Address | City | State/ Province | ZIP Code |
|------|---------------|-------|---------|------|-----------------|----------|
| Tiffany Alley Reporting & Video | | Check Payee | 3348 Peachtree Rd, NE | Atlanta | Georgia | 30326 |
| Weinberg Wheeler Hudgins Gunn & Dial LLC | | Check Payee | 3344 Peachtree Road NE | Atlanta | Georgia | 30326 |
| Steve Wells | | Claimant | 1705 CIMARRON PKWY | SANDY SPRINGS | Georgia | 30350 |
| WHEELER REPORTING CO., INC | Other | Check Payee, Other | WHEELER REPORTING CO., INC. | ATLANTA | Georgia | 30318 |
| Kevin Williams | Legal | Check Payee, Defense/Defence Counsel | c/o Weinberg Wheeler Hudgins Gunn & Dial | Atlanta | Georgia | 30326 |

### Insured

**Name** ASIAN REALTY GROUP, LLC
**Address** 20 PACIFICA STE 450, IRVINE, CA 92618
**County of Risk** CALIFORNIA
**Accounting Currency** USD

### Policy Information

**Policy Number** DGLSF209149100
**Policy Title** SF GL Policy
**Office** 5SF LSI2 SAN FRANCISCO BRANCH
**Insuring Company** LSI2 - LSI2
**Inception Date** 04/01/2010
**Expiration Date** 04/01/2011
**Policy Narrative** NO

CONFIDENTIAL

09/18/2015 09:23 AM

LIBERTY 000929

Claim: 5SCAS0001152481

St. Open ) | 🏃 | Pol: DGLSF2091491001 | Ins: ASIAN REALTY GROUP, LLC | Clmt: Steve Wells | Policy Effective Date 04/01/2010 | Policy Expiration Date 04/01/2011 | DoL: 05/31/2010 | Handler Adam Lippman (LIU Primary Casualty 5)

## Policy Type
| | |
|---|---|
| Product | Casualty |
| Major LOB | Casualty |
| Lead/Follow | NA |
| Primary/Excess | Primary |
| Status | In-Force |
| Cancellation Date | |
| Date Written | 04/01/2010 |
| Policy Trigger | Occurrence |

## Additional Insured

## Broker
| | |
|---|---|
| Name | FULCRUM INSURANCE PROGRAMS |

## Underwriting
| | |
|---|---|
| Underwriter | Allen Hansen |

## Additional Policy Details
| | |
|---|---|
| Direct/Assumed | Direct |
| Reassured | |
| Risk Engineer | |
| Policy Reference | 933436-001 |
| Facultative Reinsurance | No |

## Dashboard Elements
| | |
|---|---|
| Dashboard Product | CAS |
| Dashboard Component | GENERAL LIABILITY |
| Dashboard Department | GENERAL LIABILITY |

# Policy-level Coverages (Attachable)

Page 6

CONFIDENTIAL

09/18/2015 09:23 AM

**LIBERTY 000930**

Claim: 5SCAS000152481

| Coverage | Section | Section Detail | Effective Date | Expiration Date |
|---|---|---|---|---|
| Terrorism Inclusion | CGL | 001 CGL | 04/01/2010 | 04/01/2011 |
| Employee Benefits | CGL | 001 CGL | 04/01/2010 | 04/01/2011 |
| General Liability | CGL | 001 CGL | 04/01/2010 | 04/01/2011 |

## Latest Notes

St. Open | ... | Pol: DGLSF2081491001 | Ins: ASIAN REALTY GROUP, LLC | Clnt: Steve Wells | Policy Effective Date 04/01/2010 | Policy Expiration Date 04/01/2011 | Del: 05/31/2010 | Handler Adam Lippman (LIU Primary Casualty 5)

Appellate Counsel Approval

Appellate consel has been approved for a rate of 300/225/200 Yes. Hopefully this settles. From: Cooper, Thomas Sent: Thursday, May 28, 2015 4:08 PM To: McNamara, Kevin; Bell, Elana Subject: FW: Aslan v wells These guys are pricey. Senior partners = $300. Is that ok? From: Collier, Chris [mailto:scollier@hptylaw.com] Sent: Thursday, May 28, 2015 4:04 PM To: Cooper, Thomas Cc: Collier, Chris Subject: RE: Aslan v wells Tom, for coverage work, that is correct. For post-trial/appellate work, we can still do the $200 and $225 for associates and junior partners, but the senior partner rate is a minimum of $300. Please advise if $300 for the senior partner rate is acceptable, and thank you in

CONFIDENTIAL

09/18/2015 09:23 AM

LIBERTY 000931

Claim: SSCAS000152481

St. Open | 🏴 | 👥 | Pol: DGLSF20914910 | Inst: ASIAN REALTY GROUP, LLC | Clmt: Steve Wells | Policy Effective Date 04/01/2010 | Policy Expiration Date 04/01/2011 | Dol: 05/31/2010 | Handler Adam Lippman (LIU Primary Casualty 5)

advance. Chris S. Christopher Collier Attorney at Law Hawkins Parnell Thackston & Young LLP Direct 404-614-7479 Office 404-614-7400 Fax 404-614-7500 ccollier@hptylaw.com From: Cooper, Thomas [mailto:Thomas.Cooper@LibertyIU.com] Sent: Thursday, May 28, 2015 3:31 PM To: Collier, Chris Subject: RE: Aslan v wells You gave me your rates in the email below - $200 associate, $225 junior partner, $250 senior partner?? Thomas R. Cooper IV Liberty International Underwriters 55 Water Street, 23rd Floor New York, NY 10041 Phone No.: (212) 208-4185 Cell No: (646) 704-2980 Fax No.: (212) 208-4290 Email: Thomas.Cooper@LibertyIU.com

-Kevin McNamara (05/29/2015 08:19 AM)

Status
From: Husmann, John A. [mailto:jhusmann@BatesCarey.com] Sent: Monday, April 20, 2015 6:01 PM To: Schroder, Mike; Schatz, Stephen; Garcia, Diego Cc: Fleischer, Adam H.; Spinelli, Dominic Subject: ACE v. Liberty et al / Wells v. Aslan Counsel: As you all know, ACE has filed a declaratory action against our clients and the insureds, and has requested a waiver of service. FSIC has agreed to waive service and I understand that your clients have or will do so also. Accordingly, our responses to the complaint are due June 2, 2015. I spoke to Dan Worker over a week ago and I took from that conversation that this complaint is primarily a placeholder and that ACE expects to receive (and probably won't oppose) motions to stay the case. Despite the DJ case, Dan advised that ACE is still willing to contribute its limits toward settlement as per their email and expects to participate in paying for an appeal bond if one is needed. Steve has informed me that Zurich is attempting to schedule a mediation with plaintiff's counsel in order to resolve the underlying matter. FSIC wants to make sure that we are doing what we can to resolve the matter before June 2 so that our clients do not have to waste resources litigating ACE's DJ. Steve, can you please let us know whether a mediator has been selected and what dates have been discussed? I understand from our conversations that Plaintiff wants a commitment of $15 million before the mediation;

CONFIDENTIAL

09/18/2015 09:23 AM

LIBERTY 000932

Claim: 5SCAS000152481

St Open | ☂ ✂ | Pol: DGLSF20914910 | Ins: ASIAN REALTY GROUP, LLC | Clmt: Steve Wells | Policy Effective Date 04/01/2010 | Policy Expiration Date 04/01/2011 | Pol: 06/31/2010 | Handler Adam Lippman (LIU Primary Casualty 5)

can you let me know where you are on this issue? Please let us know if there is anything else we can do to help move this to a resolution. I suggested to some of you that if needed, we may want to ask ACE to agree to an additional 60 days to answer the complaint, which would push the response due date to August. ACE expects that some carriers will move to stay, but I do not know why our clients should go to the expense of appearing and making motions if we can just get an extension from ACE to give us more time to resolve the case. Let me know if your clients are agreeable to this approach. Regards,

-Thomas Cooper (04/22/2015 12:26 PM)

CONFIDENTIAL

LIBERTY 000933

09/18/2015 09:23 AM

Claim: 5SCAS000152481

St. Open | ▼ | ✂ Pol: DGLSF20914910C | Ins: ASIAN REALTY GROUP, LLC | Clmt: Steve Wells | Policy Effective Date 04/01/2010 | Policy Expiration Date 04/01/2011 | DoL: 05/31/2010 | Handler Adam Lippman (LIU Primary Casualty 5)

status bond
ACE will furnish the bond From: Mosseri, Miriam [mailto:Miriam.Mosseri@ACEGroup.com]
Sent: Friday, March 20, 2015 8:31 AM To: Cooper, Thomas; todd.hanson@zurichna.com;
john.deneen@axiscapital.com; Tre_Horton@swissre.com Subject: RE: Wells v. Asian Commons, LLC,

Page 10

CONFIDENTIAL

09/18/2015 09:23 AM

LIBERTY 000934

Claim: SSCAS00015248:1

St. Open | 🔲 📌 Pol.: DGLSF209149010 | Ins: ASIAN REALTY GROUP, LLC | Clint: Steve Wells | Policy Effective Date 04/01/2010 | Policy Expiration Date 04/01/2011 | Dol.: 05/31/2010 | Handler Adam Lippman (LIU Primary Casualty 5)

et al. Tom: Notwithstanding ACE's previous reservations, ACE will proceed in procuring the bond. However, the bond will be secured with each of the insurers' respective limits. In other words, ACE is not collateralizing the bond only with its limits. ACE continues to stand on its previously-asserted positions on primary exhaustion and priority of coverage among the carriers and continues to reserve its rights on all coverage issues, as previously set forth. Our counsel has recirculated the proposed non-waiver reflecting this change. Please confirm agreement. Thanks, Miriam. Miriam Mosseri Claims Director, Excess Casualty Claims ACE North American, 10 Exchange Place, 9th floor, Jersey City, NJ 07302 T 201-356-5109 Miriam.Mosseri@acegroup.com | www.acegroup.com From: Cooper, Thomas [mailto:Thomas.Cooper@Liberty|U.com] Sent: Wednesday, March 11, 2015 1:18 PM To: Mosseri, Miriam; todd.hanson@zurichna.com; john.deneen@axiscapital.com; Tre_Horton@swissre.com Subject: RE: Wells v. Asian Commons, LLC, et al. I have objected more than once, on our conference calls and in writing, to LIU furnishing the bond. Yet that language is still in the agreement. I will not sign the agreement wherein it says that LIU will furnish the bond. I asked ACE on our last conference call if they would furnish the bond and ACE said they would consider it. Has ACE made a decision as to furnishing the bond? Thomas R. Cooper IV Liberty International Underwriters 55 Water Street, 23rd Floor New York, NY 10041 Phone No.: (212) 208-4185 Cell No: (646) 704-2960 Fax No.: (212) 208-4290 Email: Thomas.Cooper@Liberty|U.com -Thomas Cooper (03/23/2015 09:39 AM)

Status

ACE has tendered its limits to Zurich. The plan is for Zurich to settle this matter. From: Worker, Danny [mailto:Dan.Worker@lewisbrisbois.com] Sent: Friday, March 20, 2015 4:54 PM To: 'Schatz, Stephen'; Husmann, John A.; 'tgarcia@thompsoncoe.com'; Schroder, Mike Cc: Tre_Horton@swissre.com; Mosseri, Miriam; 'todd.hanson@zurichna.com'; 'John.Deneen@axiscapital.com'; Cooper, Thomas; 'Waldron, Peter' Subject: RE: Wells v. Asian Commons, LLC, et al. Steve My understanding of the demands made by Zurich was that it wanted to control of the settlement. ACE has tendered its limits for that purpose. Zurich has sufficient limits to settle the claim. It should act in accordance with the insured's best interest in mind. At this point ACE has made its limits available for settlement purposes and the protection of our mutual insured. Let us know if the case settles. From: Schatz, Stephen [mailto:Steve.Schatz@swiftcurrie.com] Sent: Friday, March 20, 2015 3:38 PM To: Worker, Danny Husmann, John A.; 'tgarcia@thompsoncoe.com'; Schroder, Mike Cc: Tre_Horton@swissre.com; Mosseri, Miriam; 'todd.hanson@zurichna.com'; 'John.Deneen@axiscapital.com'; Cooper, Thomas; 'Waldron, Peter' Subject: RE: Wells v. Asian Commons, LLC, et al. Dan, Thank you for your email. We have sent to you Zurich's executed signature page to the mutual non-waiver agreement via separate email. Zurich hereby acknowledges ACE's tender of its $10M indemnity limit. Such acknowledgment is made under the same reservation of rights as you expressed in your email, as Zurich expressed in its letters to ACE dated February 2 and March 12, 2015, and as expressed in the mutual non-waiver agreement. Such acknowledgment does not constitute an acceptance by Zurich of a duty to defend the insureds in the lawsuit, post-judgment motions, and possible appeal and does not relieve Liberty of its

CONFIDENTIAL

09/18/2015 09:23 AM

LIBERTY 000935

Claim: 5SCAS00152481

St. Open | Pol: DGLSF20914910 | Ins: ASIAN REALTY GROUP, LLC | Clmt: Steve Wells | Policy Effective Date 04/01/2010 | Policy Expiration Date 04/01/2011 | DoL: 09/31/2010 | Handler Adam Lippman (LU Primary Casualty 5)

obligation to continue to defend the insureds. It is Zurich's understanding that ACE is not demanding that Zurich settle the case for the amount demanded (the total amount of the judgment) in plaintiff's time-limit demand. Zurich will seek to settle the case in its entirety if possible, giving equal consideration to the best interests of all carriers' insureds. Zurich will advise all carriers and the insureds regarding its efforts to settle the matter. Zurich will request that plaintiff agree to mediate the case without pre-condition and request that plaintiff allow Zurich to respond to his demand at the mediation. Please let me know if you have any questions. Thanks, Steve Stephen Schatz 404-888-6133

-Thomas Cooper (03/23/2015 09:36 AM)

ACE tender
From: Worker, Danny [mailto:Dan.Worker@]lewistbisbois.com] Sent: Thursday, March 19, 2015 2:47 PM To: 'Schatz, Stephen'; Husmann, John A.'; 'dgarcia@thompsoncoe.com'; Schroder, Mike Cc: Tre_Horton@swissre.com; Mosseri, Miriam; 'todd.hanson@zurichna.com'; 'John.Deneen@axiscapital.com'; Cooper, Thomas; 'Waldron, Peter' Subject: RE: Wells v. Asian Commons, LLC, et al. Dear Steve, Consistent with Zurich's request below, we have a finalized non-waiver agreement. We have signed the final document, as has counsel for Swiss Re accepting these changes. Please forward a copy of the agreement signed by you and your client at your earliest opportunity. Your client, Todd Hanson, requested on March 12, 2005, in a letter directed to Miriam Mosseri of ACE that "ACE tender its $10M indemnity limit to Zurich for settlement purposes. Previously, each of the primary carriers have committed their $1M respective liability limits for settlement. At this time, consistent with Zurich's request, ACE tenders its $10M indemnity limit to Zurich to resolve the loss with the understanding that Zurich will "make every attempt to resolve the case in its entirety." As you are aware, ACE is tendering pursuant to the reservation that it is co-excess with Zurich, and has a right to seek reimbursement for any settlement under $23M. Consistent with the terms of the agreed upon non-waiver this tender does not waive any of ACE's or any of the other carriers' rights. Please advise when and for how much settlement is achieved.

-Thomas Cooper (03/19/2015 03:37 PM)

Letter from AXIS
From: Schroder, Mike [mailto:Mike.Schroder@swiftcurrie.com] Sent: Tuesday, March 10, 2015 2:57 PM To: Dan.Worker@lewisbisbois.com Cc: Schatz, Stephen; john.deneen@axiscapital.com; Cooper, Thomas; Tre_Horton@swissre.com; todd.hanson@zurichna.com; dwcollier@worthingse.com; rrobins@robbinsfirm.com; dgarcia@thompsoncoe.com; jhussman@batescarey.com; miriam.mosseri@acegroup.com; Fleischer, Adam H. Subject: Stephen Wells v. Asian Commons, LLC, et al. Dear Danny: As we have discussed, this firm represents AXIS Surplus Insurance Company ("AXIS") in connection with the Wells lawsuit. On March 3, 2015, I wrote your client, Miriam Mosseri

CONFIDENTIAL

09/18/2015 09:23 AM

LIBERTY 000936

Claim: SSCAS000152481

St. Open | ❓ 🔧 Pol. DGLSF20914910 | Ins: ASIAN REALTY GROUP, LLC | Clmt: Steve Wells | Policy Effective Date 04/01/2010 | Policy Expiration Date 04/01/2011 | Del. 05/31/2010 | Handler Adam Lippman (LLU Primary Casualty 5)

at ACE North American, to inform her that AXIS was agreeing to tender its $1M policy limit to ACE to use toward reaching a settlement with the Plaintiff. In doing so, AXIS reserved its position that ACE is responsible for any settlement amount over the $1M tendered by First Specialty Insurance Company, and that ACE's limits must be tendered before AXIS can be called upon to contribute to any settlement. However, because of the potential exposure to our insureds beyond the limits of the available insurance, AXIS has agreed to tender its limits, reserving its right to seek reimbursement from ACE. The Plaintiffs settlement demand expires today, yet ACE has made no effort that I'm aware of to settle the case with the Plaintiff's attorney. Instead, ACE appears to be unrealistically confident that the appeal on the punitive damages cap will be defeated, and that the appealable issues in the Georgia Court of Appeals will result in a substantial reduction of the verdict or even a new trial. On behalf of AXIS, I would again urge ACE to reach out to the Plaintiff's attorney and settle this case today, before the demand expires. AXIS does not waive any of its rights under the AXIS policy, and AXIS does not intend to waive any of its coverage defenses. Nor shall AXIS be estopped from asserting any applicable defense. No action taken by AXIS shall constitute an admission of coverage or be construed as a waiver of the rights of AXIS under applicable law, the AXIS policy, or any other policy issued by AXIS under which WSE or Asian may have or claim rights. AXIS reserves all of its rights under the AXIS policy, and reserves the right to supplement or amend this communication at any time. Michael H. Schroder Partner Direct: 404-888-6126 Swift, Currie, McGhee & Hiers, LLP • 1355 Peachtree St. N.E., Suite 300 • Atlanta, Georgia 30309 Fax: 404.888.6199 • www.swiftcurrie.com • Mike.Schroder@swiftcurrie.com • Download my vCard

The Atlanta Journal-Constitution Top Workplaces

Atlanta Business Chronicle's Best Places to Work Follow us on Twitter (@SwiftCurrie) and Like us on Facebook

-Thomas Cooper (03/10/2015 05:53 PM)

Letter from First specialty

From: Husmann, John A. [mailto:jhusmann@BatesCarey.com] Sent: Friday, March 06, 2015 7:36 PM To: 'Dan.Worker@lewisbrisbois.com'; Cc: Cooper, Thomas; 'dwcollier@worthlingse.com'; 'Peter.Waldron@ACEGroup.com'; 'Tre_Horton@swissre.com'; 'todd.hanson@zurichna.com'; 'Richard.Robbins@robbinsfirm.com'; 'John.Denneen@axiscapital.com'; Fleischer, Adam H.; 'Mike.Schroder@swiftcurrie.com'; 'Steve.Schatz@swiftcurrie.com'; 'dgarcia@thompsoncoe.com' Subject: RE: Wells v. Asian Commons, LLC., et al. Importance: High Dear Dan: As you know, this firm represents First Specialty Insurance Corporation ("FSIC") in connection with the referenced Wells lawsuit. This is sent in follow up of our correspondence of February 20, 2015 and March 3, 2015 regarding the Plaintiffs pending settlement demand of $25,871,640.96 in exchange for dismissal of the case against WSE, LLC ("WSE") and Asian Commons, LLC ("Asian") and dropping the Plaintiff's appeal to reverse Georgia's punitive damages cap. As discussed in detail in our prior correspondence, failure to settle now may result in significant liability to WSE and Asian beyond limits of all available insurance. The Plaintiff's settlement demand expires in four days (March 10, 2015), and we have received no response to either of

CONFIDENTIAL

09/16/2015 09:23 AM

LIBERTY 000937

Claim: 5SCAS000152481

St Open | ↑ | ☒ | Pol: DGLSF2091491OO | Ins: ASIAN REALTY GROUP, LLC | Clmt: Steve Wells | Policy Effective Date 04/01/2010 | Policy Expiration Date 04/01/2011 | DoL: 05/31/2010 | Hander Adam Lippman (LIU Primary Casualty 5)

our prior letters or Axis' March 3, 2015 letter. FSIC, Axis, and Liberty have each tendered their respective limits of insurance in order to settle this case. Therefore, ACE has $3 million available to negotiate a settlement of the underlying matter on or before March 10, 2015. FSIC continues to believe that ACE has the responsibility to immediately settle this case in order to avoid increasing its exposure and that of its insureds by again missing the opportunity to settle. As set forth in our March 3, 2015 letter, if ACE is convinced that American Guarantee is also responsible, then ACE must work quickly with American Guarantee to achieve the settlement of this matter before the March 10, 2015 deadline in order to fund that portion of the settlement over $3 million. So far, ACE has refused to settle this case, or even inform the other carriers and ACE's insureds why it should not or cannot settle this matter. If ACE believes that the case should not be settled at this time, or if ACE cannot negotiate a resolution to fund the settlement with American Guarantee, please respond to our letters and explain ACE's position. FSIC does not waive any of its rights under the FSIC policy and by virtue of the matters discussed herein. FSIC does not intend to waive any of its coverage defenses, nor shall FSIC be estopped from asserting any applicable defense. No action taken by FSIC shall constitute an admission of coverage or be construed as a waiver of the rights of FSIC under applicable law, the FSIC policy discussed herein, or any other policy issued by FSIC under which Asian or WSE may have or claim rights. FSIC reserves all of its rights under the FSIC policy, and reserves the right to supplement or amend this email at any time.

-Thomas Cooper (03/09/2015 10:10 AM)

status

We made a motion to dismiss the plaintiff appeal on punitives to be the post trial motions need to be heard first. Plaintiff has filed opposition to our motion. Plaintiff filed for a bond. We filed opposition to the bond. We requested a hearing when we filed our opposition to plaintiff's request for a bond. The post trial motions should stay the need for a bond. Who will furnish the bond and who will pay for appellate costs has not been resolved between LIU and ACE.

-Thomas Cooper (03/02/2015 11:18 AM)

Bond status

From: Cooper, Thomas Sent: Friday, February 20, 2015 6:21 PM To: 'Schatz, Stephen'; Mosseri, Miriam; Fleischer, Adam H. Cc: Schroder, Mike; Waldron, Peter; 'todd.hanson@zurichna.com'; Husmann, John A.; Garcia, Diego; 'Tre_Horton@swisere.com'; 'John_Densen@axiscapital.com' Subject: FW: WSE (Wells) Non-waiver agreement Hello All: LIU objects to the following provision: WHEREAS, Liberty will be responsible for arranging for and obtaining the bond, subject to the agreed-upon non-waiver; and As I have stated, LIU does not have the obligation to furnish the bond. LIU agrees with the remainder of the provisions in the attached revised non-waiver agreement. Thank you Thomas R. Cooper IV Liberty International Underwriters 55 Water Street, 23rd Floor New York, NY 10041 Phone No.: (212) 208-4185 Cell No.: (646) 704-2980 Fax No.: (212) 208-4290 Email: Thomas.Cooper@LibertyIU.com

CONFIDENTIAL

09/18/2015 09:23 AM

LIBERTY 000938

Claim: 5SCAS000152481

St Open | ⚓ | 📠 📎 | Pol: DGLSF209149100 | Ins: ASIAN REALTY GROUP, LLC | Clmt: Steve Wells | Policy Effective Date 04/01/2010 | Policy Expiration Date 04/01/2011 | Dol: 05/31/2010 | Handler Adam Lippman (LIU Primary Casualty 5)

appellate costs

From: Cooper, Thomas Sent: Monday, February 23, 2015 10:59 AM To: Mosseri, Miriam Subject: Wells
9420152990 Hello Miriam – LIU will agree to split Mike Frick's appellate costs with ACE and allow Frick
to continue as appellate counsel starting from the time the notice of appeal is filed or from the time when
the trial transcript is ordered. LIU did not consent to pay for Frick as monitoring counsel at the time of
trial. In fact LIU stated that they would not pay for Frick fees at trial. LIU retained Kevin Williams to defend
the insured and Kevin has continued to defend the insured post-verdict as he filed the motion to dismiss
the appeal, the opposition to the bond and the post-trial motions. LIU will split the fees with ACE when
Frick takes over as the attorney of record for the appeal. LIU's position is based on the fact that ACE
had chances to settle or agree to a high-low within their layer which would have eliminated the need for
appellate counsel. Kindly review the proposal and get back to me. Thanks Thomas R. Cooper IV Liberty
International Underwriters 55 Water Street, 23rd Floor New York, NY 10041 Phone No.: (212) 208-4185
Cell No: (646) 704-2980 Fax No.: (212) 208-4290 Email: Thomas.Cooper@LibertyIU.com
-Thomas Cooper (02/24/2015 01:36 PM)

status
We had a 2nd conference call with all the carriers involved in this case. We filed post trial motions. Plaintiff
filed an appeal as to the punitives. We made a motion to dismiss the appeal bc the post trial motions need
to be heard first. Plaintiff filed for a bond. We filed opposition to the bond. The post trial motions should
stay the need for a bond.
-Thomas Cooper (02/24/2015 01:34 PM)

-Thomas Cooper (02/24/2015 01:37 PM)

CONFIDENTIAL

09/18/2015 09:23 AM
LIBERTY 000939

Claim SSCAS0001524B1

**Strategy**

I had a conference call with all the carriers involved in this case. The plan going forward is to get in writing a stay of execution, filed post trial motions and then mediate the case with Rex Smith from henning. we will contact plaintiff and see if he will agree with this plan.

- Thomas Cooper (02/10/2015 10:47 AM)

conference call

From: Richard Robbins [mailto:Richard.Robbins@robbinsfirm.com] Sent: Friday, January 23, 2015 9:38 AM To: 'mfrick@hallboothsmith.com'; 'sbristol@hallboothsmith.com'; 'dwcoller@worthingse.com'; Cooper, Thomas; 'miriam.mosseri@acegroup.com'; 'Peter.Waldron@ACEGroup.com'; 'todd.hanson@zurichna.com'; 'Tre_Horton@swisse.com'; Richard Robbins; 'Mike.Schroder@swiftcurrie.com'; 'Steve.Schatz@swiftcurrie.com'; 'jcahill@asiang.com'; 'kwilliams@wwngd.com'; 'tschermerhorn@wwngd.com'; 'valsabrook@wwngd.com' Subject: WSE/Wells Robbins: 'Mike.Schroder@swiftcurrie.com'; 'Steve.Schatz@swiftcurrie.com'; 'jcahill@asiang.com'; 'kwilliams@wwngd.com'; 'tschermerhorn@wwngd.com'; 'valsabrook@wwngd.com' Subject: WSE/Wells Importance: High As outside litigation counsel for WSE, LLC, I wanted to thank you all for participating in the conference call this week. We and our client found it productive, and we trust the insurers will work together cooperatively and expeditiously to avoid further damage to WSE, their mutual insured. To follow up on the call, we want to emphasize the following: 1. We appreciated the assurances by Miriam Mosseri, ACE's representative, that a $25 million bond will be posted if and when needed, which could be as early as 10-20 days. A bond is absolutely essential to the financial well-being of WSE, WSE and its affiliates already are facing tough questions from investors, lenders and partners concerning their viability in light of the judgment, and have already suffered business damage. We need written assurances on or before Friday, January 30, 2015, that the insurers will furnish and post such a bond. If and when necessary, and be prepared to do so prior to the time any collection actions are authorized under Georgia law (which is 10 days following entry of a final judgment). Again, the date a bond may have to be posted is subject to change by court order or agreement, but the insurers must be prepared to act by the earliest possible date. WSE and affiliates are finding it difficult to give any assurances to their business partners without such confirmation. 2. We understand the insurers intend to discuss among themselves how they will participate in a bond. We also understand that the nature of a surety bond being posted in favor of the plaintiff may require the insurers to have some level of agreement regarding the ultimate repayment of the bond obligation; however, we want to make it clear that any disagreement among the insurers as to their respective responsibilities at this stage must not stand in the way of a bond being posted. It would obviously create serious legal exposure to all of the insurers to WSE if, due to the insurers' disagreement,

**CONFIDENTIAL**

**LIBERTY 000940**

09/18/2015 09:23 AM

Claim: 5SCAS00015Z481

no bond is posted and as a result the insured is forced into bankruptcy and/or liquidation. This would be in addition to the insurers' current exposure on the judgment. 3. As to settlement, we understand there remains a settlement demand within the collective policy limits. The latest settlement offer was $18.9 million, and the collective policy limits, according to our calculations, are $34 million. Thus, all insurers have a duty to settle within policy limits, and we hereby demand that the insurers collectively settle within policy limits at the earliest possible opportunity. 4. The current settlement offer may not remain on the table long, depending on the amount of the judgment the Court enters next week. While the Court indicated earlier it was inclined to write down the punitive damages award, all of us who are litigators understand that a court can and often does change its mind. If the Court were to allow the $73 million verdict to stand at this point, the plaintiff would almost certainly take the current offer off the table. While we have great respect for insurance defense counsel here, the fact is that no one can be sure how the Court will rule on any judgment and ultimately on any post-trial motions, or how the Court of Appeals will ultimately rule. It is very risky, in our opinion, to let this "play out," as someone commented on the phone call. If the insurers decide to play poker and not settle now, and assuming a verdict in excess of collective policy limits was upheld on appeal, WSE obviously would expect the insurers to be responsible for the full amount of the ultimate judgment. WSE's intent is to continue to support the insurers' efforts before the Court and ultimately on appeal, but at the same it must insist on its rights under the insurance policies and under Georgia law. Our position, as expressed in my letter to the insurers prior to trial and in subsequent emails during the trial, is that the case should have been settled earlier, but that was then and this is now. There is ample time in the future to second-guess, but not ample time to bring closure to this lawsuit. The insurers are faced with a new financial reality due to the verdict, and still have an obligation to settle within policy limits. Any disagreement on which insurer has to pay what is secondary to the primary issue, which is to settle the case. All the insurers are sophisticated and surely have procedures in place for resolving participation disagreements among themselves without delaying a favorable settlement opportunity. Please confirm the availability of a bond not later than next week, and please keep us posted on settlement efforts. Richard L. Robbins ROBBINS ? ROSS ? ALLOY ? BELINFANTE ? LITTLEFIELD LLC 999 Peachtree Street, N.E., Suite 1120 Atlanta, GA 30309 678.701.9320 (Direct) 678.701.9381(Main) 404.856.3250 (Fax) www.robbinsfirm.com

-Thomas Cooper (01/28/2015 04:24 PM)

CONFIDENTIAL

09/18/2015 09:23 AM

LIBERTY 000941

Claim: 5SCAS00152481

## Day 3 Trial Report

Jan. 14, 2015 Johnny Orr Was the first of four of Defendant's employees called for cross-examination by Plaintiff's counsel. The parties had agreed at the Pretrial Conference that any of Defendant's employees called by Plaintiff during his case in chief could then be examined by the defense without the necessity of recalling that witness during Defendant's case in chief. Johnny Orr was the maintenance technician on call over the Memorial Day week-end. He testified that he received a work order for air conditioning repairs to Unit 1703, and he knew that Stephen Wells was going to relocate into that unit on June 1. The policy was to perform the repair within 24 hours of receipt of the emergency repair order, but since the tenant was not moving in until June 1, he opted to perform the air conditioning repair when he could as long as it was before June 1. Orr checked out a key to that apartment on May 29 and apparently took it home with him. In violation of company policy. He denied ever going into Unit 1703 prior to the explosion on May 31. At around noon on May 31, Johnny Orr was in his car when he received a call from another tenant, advising that there was a strong odor of gas coming from the unit below her. Orr told her to call Atlanta Gas, and that he was on his way. When he arrived at the apartment complex the explosion had already occurred. He spoke with the Fire Inspector and told her he had not been in the unit. He was questioned about his knowledge of the repair parts for the hot water heater that were found in the unit by the fire inspector, and if he had taken them from the unit after the fire occurred, and he denied that he had done so. He denied that the maintenance staff was overworked and understaffed. He acknowledged that the maintenance personnel were not trained about code requirements for gas dryer lines. He stated that at least 2 or 3 times per month he received calls about gas leaks, and usually found that a pilot light had gone out, or a stove had been left on. On examination by defense counsel, Mr. Orr reiterated that he did not have any reason whatsoever to turn the gas dryer line on, as his only assigned task in that unit was to work on the HVAC. Daniel Surovets Was the maintenance supervisor at Edgewater, but was at home on vacation when the explosion occurred. He denied having any knowledge that some of the units had gas dryer lines, much less that they were uncapped. He was unaware of fire code requirements and does not believe any of his maintenance men were either. He acknowledged that he and his men had received no training from Corporate in that regard. He denied that his men were overworked or that the complex was understaffed. He identified a water line coupling that was seen on photos taken by the fire inspector, and does not know who had been working on the hot water heater, or when. He denied knowledge of any evidence being taken from the apartment after the fire inspector left. He was questioned at length by Plaintiff's counsel about the lack of communication between management and maintenance, at least in regard to gas dryer lines. Surovets said that Johnny Orr called him right after the explosion

and told him that Johnny had been working on another apartment at the time, and that he had actually been planning to effectuate the repairs to Wells's HVAC next, (this is, of course, in contradiction to Orr's testimony that he was off premises in his car when he was called about the gas smell). Surovelis said that if Wells testified that he saw a maintenance man going into his unit on the morning of May 31, then it most likely would have been Orr. (Interestingly, however, during Orr's testimony it was obvious that Orr did not fit the description of the maintenance man, as given by Plaintiff). Carl Walton was the Leasing Liaison at Edgewater, and knew that Wells was moving from one apartment to another on June 1. When Wells asked if he could have a key to the new apartment over Memorial Day weekend, Walton said it was alright, since he was in the business of keeping the tenants happy. Walton knew this was against policy, but felt it was alright to help out Wells, whom he described as a good tenant. Walton also testified that Wells called him on Saturday and told him that his hot water heater wasn't working. This is in contrast to Wells, who had testified that he remembered telling Walton about the HVAC, but not the hot water heater. Orr testified that he was the only one who knew of an HVAC problem. Oleg Tanovich was one of the maintenance techs at Edgewater. He testified that he was not aware that there were any gas dryer lines at the apartments, and had never received any training about capping them. He never saw reference to the gas dryer lines in the punchlist until it was added after this incident. Ms. Carol Ann Saenz has been the designated company representative for the trial, and has sat at counsel table throughout. In May 2010 she was the Assistant Manager/Community Director for Edgewater. She was questioned about her knowledge of the policies and procedures, including the ones for work orders, key control, etc. She was actually a very favorable witness, in that she testified that her husband is a maintenance supervisor and that he commented about the presence of a gas dryer line in their apartment, but made no comment about it being uncapped. Alena Drvostepova was an EMT who worked for Rural Metro Ambulance and was answering a call regarding when the call came out about the explosion. She was only a block away, and arrived in time to see Stephen Wells running into the complex yard, and sitting down. He had been flash-burned, and his hair, eyebrows and lashes were singed. She went to him and observed his mouth and tongue and then help him walk to the ambulance for transport to the hospital. Wells told her that he "tried to light a hot water heater". She testified she didn't know when he tried to light it, but that was what he volunteered to her, while otherwise seeming to be in some shock. Dr. Walter Ingram is the Medical Director at Grady who treated Wells for his burns, and did the skin grafting from his midriff. He testified via a video deposition that Wells sustained burns over 22% of his body. He described the hydrotherapy and debridement procedures, and described his care during the two-week stay at Grady from May 31 through June 14, 2010. After discharge from Grady, Dr. Ingram followed Wells at the Grady burn clinic. He has been very pleased with Wells' recovery, but warns that too much sun can damage his skin further. He acknowledged that fear and anxiety are common among fire victims, but also acknowledged that Wells suffered from depression prior to this fire. Ms. Jeannie Dollar is a Voice Therapist and Speech Pathologist who began treating Wells on June 17, 2010. She diagnosed him as "aphonic", meaning he could not speak. She placed him on 100% voice rest for a week, and then for a second week. She saw him over the next weeks, and on August 9, 2010 released him for follow-up as needed, although he still had significant issues with his raspy voice, and being unable to speak full sentences in one breath. She then saw him again on October 12, 2013, and

Claim: 5SCAS0001152481

Claim: SSCASO00152481

was surprised that he was actually worse than when she had seen him 3 years before. She believes the scarring has matured and caused him speech difficulties which would make talking to a class of students a rather challenging event. She stated that he is at high risk for the development of voice nodules or polyps, which would require up to another six months of complete voice rest. Once again the jury was very attentive and is not overtly friendly to either side. They seem to get along well with each other which may lead to minimal combat during deliberation. Today's testimony further solidified the likelihood of a significant verdict for the Plaintiff in that the majority of the testimony focused on the lack of training of the maintenance personnel in regard to gas dryer lines and general policies and procedures. Defense counsel have made points where possible in attempting to show that there is a significant possibility that Plaintiff Stephen Wells, in fact, turned the gas valve on shortly before leaving the unit on Monday morning. The Atlanta Gas Light meter flow records show that the gas was turned on at 9:22 am and remained on until the explosion shortly after noon. Defense counsel made the point that it was not until almost 3 years after the explosion that Plaintiff first mentioned that a maintenance person was entering his unit as he was leaving it on the morning of the explosion. The description of the maintenance man which he gave does not match the appearance of employee, Johnny Orr, who denies having been in the apartment and working on the gas line prior to the explosion.
-Michele Simpson (01/15/2015 03:24 PM)

Plaintiff new High/Low proposal
Plaintiff made a high/low proposal to excess carrier ACE of $3M/$11M. We have told counsel/ACE that while our $1M limit is available for settlement purposes, we will only agree to a low of $500K.
-Michele Simpson (01/15/2015 01:00 PM)

Day 2 Trial report
> Opening Statements: > > Plaintiff counsels' opening statement lasted more than an hour. He outlined the obvious - the gas line was uncapped. He pointed out the hopeless inconsistencies with the employees of Edgewater regarding the maintenance of the gas appliances, and addressed inconsistencies with the date Plaintiff received the keys to 1703 and the work order for the HVAC system. He also spent time explaining Plaintiff's trauma, damages and depression. > > The Defense opening pointed out that there was some evidence that Plaintiff tried to light the pilot light, and that the mystery maintenance man did not appear until late in the case. The jury was urged to consider all of the evidence before formulating an opinion regardless of how compelling Plaintiffs case might be. > > Stephen Wells Testimony: > > Mr. Wells was a very effective witness. His over all demeanor was that of a man older than his age who is beat down and terribly suffering on the inside. He was calm and soft spoken with a shaky, raspy voice. When asked to show his scars to the jury, he did so modestly and stated that as a result of the burns, his "skin is too tight". > > Mr. Wells did a good job of explaining his injuries, treatment and rehabilitation. Although he did not waive his mental health privilege, his personal belief and explanation that his anxiety

Claim: 5SCAS00152481

and fear is a result of the explosion seemed believable to the jury. > > The cross examination of Mr. Wells focused on pointing out that Plaintiff stated that he did in fact attempt to light the pilot light. He also had Plaintiff describe the maintenance man he claimed entered his apartment on the day of the explosion, and had the Plaintiff admit that the maintenance man was not mentioned until his deposition testimony. > Alberto Reyes Testimony: > > Mr. Reyes was a resident above Mr. Wells at the time of the explosion. > Cheryl Wells Testimony: > > Cheryl Wells, the Sandy Springs Fire Investigator, confirmed the NFPA code violation for the uncapped gas line and for the valve to be in a room other than where the end of the gas line was. She also explained that a specific tool was required to open the gas valve, and that this tool was not found in Mr. Well's apartment during the investigation. > > > During cross examination, Ms. Walls agreed that regardless of the uncapped gas line, the explosion would not have occurred if the gas was not turned on > > > The Jury: > > After listening to testimony and watching the 8 minute clip from the Day in the Life Video, the jury seems very receptive to Plaintiff. During the video, most of the women jurors had locks of sorrow, pity and nausea. The men seemed somewhat bewildered. Following the video, Plaintiff showed the jury the scars on his arms and legs. All jurors stood and spent time looking and listening to his description of the scars and the pain endured. When explaining that his "skin is too tight", many jurors looked as though this was a profound statement and genuinely seemed sad for Plaintiff. > > Sent from my iPhone The information contained in this message may contain privileged client confidential information. If you have received this message in error, please delete it and any copies immediately.-
-Thomas Cooper (01/13/2015 11:28 PM)

Jury selection
We picked a jury yesterday on 1/12/15. The jury is comprised of the following: 1 African American Female 4 African American Males 6 White Females 1 White Male 1 Hispanic Female Of the same, 10 have experience with lighting pilot lights, 3 have known someone who has suffered burns and 1 had an issue with the video. The juror who had an issue with the "Day in the Life" video is concerning, but stated that she could be fair and impartial. The occupations of the jurors are: mechanic, truck driver, musician, sales, marketing, manager, insurance clerical, CPA, Legal IT, self employed and unemployed. It is worth noting that one juror is an intern at the Grady Trauma Center. 12 potential jurors were released for cause. Out of the same, 6 were unable to be fair and impartial due to the "Day in the Life" video. Trial will begin today on tuesday 1/13/15.
-Thomas Cooper (01/13/2015 10:17 AM)

Limits
We made our limits available on sunday Jan 11, 2015 From: Darin Collier <dwcollier@worthingse.com<mailto:dwcollier@worthingse.com>> Date: January 11, 2015 at 4:48:13 PM EST To: "Williams, Kevin" <kwilliams@wwhgd.com<mailto:kwilliams@wwhgd.com>> Subject: RE:

Claim: 5SCAS000152481

Wells No reason to discuss . . . keep me posted on what, if anything, you want me to do tomorrow. From: Williams, Kevin [mailto:kwilliams@wwhgd.com] Sent: Sunday, January 11, 2015 3:09 PM To: Darin Collier Subject: Wells Just tried your cell. I was just advised that liberty is making their limits available to ACE for any settlement discussions. They also indicated they would authorize 500 k on any low if folks want to discuss a high - low. I called counsel for ACE , mike Frick , and informed him and sent him an email. My cell is 404-579-9303 if you want to discuss. Thanks. Y. Kevin Williams Attorney WEINBERG WHEELER HUDGINS GUNN & DIAL 3344 Peachtree Road NE Suite 2400 Atlanta, GA 30326 404-832-9542 phone 404-875-9433 fax VCARD<http://www.wwhgd.com/vcard-71.vcf>/ www.wwhgd.com/vcard-71.vcf>> www.wwhgd.com<http://www.wwhgd.com> <<http://www.wwhgd.com>> The information contained in this message may contain privileged client confidential information. If you have received this message in error, please delete it and any copies immediately. Begin forwarded message: From: <kwilliams@wwhgd.com><mailto:kwilliams@wwhgd.com>> Date: January 11, 2015 at 3:02:21 PM EST To: "mfrick@hallboothsmith.com<mailto:mfrick@hallboothsmith.com>" <mfrick@hallboothsmith.com<mailto:mfrick@hallboothsmith.com>> Subject: Wells This will confirm liberty is making its limits available for any settlement discussions. If anyone wants to still discuss a high - low they are offering 500 k on the low. The information contained in this message may contain privileged client confidential information. If you have received this message in error, please delete it and any copies immediately.

- Thomas Cooper (01/13/2015 10:13 AM)

Motions in Limine

From: Byrd, Chris [mailto:CByrd@wwhgd.com] Sent: Monday, January 12, 2015 7:18 AM To: Simpson, Michele Cc: Williams, Kevin; Schermerhorn, J. Tyler; Alsabrook, Vickie; Cooper, Thomas Subject: Re: Stephen D. Wells v. Aslan Commons, LLC and WSE, LLC Miriam: On Friday, we had a lengthy hearing to discuss motions in limine. Below, I outline the more relevant/critical decisions: 1. The fact that over 50 other apartments were found (after the explosion) to have dryer lines with no caps (and were subsequently capped) will come in. Such evidence goes to notice, existence of a defect and there is law that states that, where a state agency requires an action, such an action is not excludable as a subsequent remedial measure. 2. Plaintiffs attempted to exclude the EMT statement that Wells told her "I tried to light the water heater" on hearsay grounds. That statement will come in as recorded recollection. 3. We argued that the court should not permit Plaintiff's counsel to argue that apportionment to Wells will reduce the amount of any award he receives. The judge ruled against us, noting that he typically informs the jury of the effect of apportionment. Plaintiff's lawyer will be free to argue that that every percentage point of fault assigned to his client reduces the award (I would expect the argument to be phrased as "apportioning fault to Plaintiff gives defendants a 'discount") and he will be able to also stress that assigning 50% to Plaintiff would result in no recovery at all. 4. Jeannie Dollar's testimony (the voice therapist) will be allowed. Thus, the jury will hear that Wells has a permanent voice deficit. Along those same lines, Plaintiff will be able to inform the jury that he has erectile dysfunction and that he suffers from

CONFIDENTIAL

09/18/2015 09:23 AM

LIBERTY 000946

Claim: SSCAS00152481

PTSD/depression. He will not, however, be able to testify as to any doctor's diagnosis. We, in turn, can bring up the fact that he has been diagnosed with PTSD/depression in the past. Also, we will be able to point out that Well's ED is caused by Perrone's disease. 5. As for Plaintiff's claims of permanent disability/injury, Plaintiff's lawyer informed the court that he has no intent to argue that Wells will be unable to work at the pre-explosion level for the rest of his life. Rather, he will say that Wells cannot now work at that level, and he does not know when or if he will be able to return. Plaintiff's lawyer said he does not intend to "blackboard" a lost income number. He is going to leave it up to the jury. 6. Plaintiff attempted to keep us from arguing that Wells turned on his own gas. That motion was denied. Of course, there were other matters discussed, but these are the most notable. Trial begins today. Please let me know if you have any questions. Sent from my iPhone Christopher T. Byrd Attorney WEINBERG WHEELER HUDGINS GUNN & DIAL 3344 Peachtree Road NE Suite 2400 Atlanta, GA 30326 404-832-9646 phone 404-875-9433 fax VCARD<http://www.wwhgd.com/vcard-9.vcf> www.wwhgd.com <<http://www.wwhgd.com>>
-Thomas Cooper (01/12/2015 12:03 PM)

Authority
Tom has been given the OK to make our limit available to the excess carrier pending correspondence from them requesting it. It is unlikely that this will settle short of trial. If tried, he'll attempt a hi/low with $500,000 as the low.
-Kevin McNamara (01/08/2015 03:24 PM)

status
Plaintiffs counsel has countered with $800K - $8M. We had a conference call with excess to discuss our next offer. Excess is going to get authority up to $2.5M for a high.
-Thomas Cooper (12/30/2014 04:14 PM)

Updated Legal Budget
Obtained updated legal budget through trial - increasing expense reserves as follows: Defense - $150,000 (covers approx $50K with CLBU & up to $100K for trial prep/trial) Allocated LAE - $25,000 - Witness fees/travel costs, litigation support/repro/exhibits, etc
-Michele Simpson (12/19/2014 01:50 PM)

Status
We will offer a high-low offer of $250k and $1.2M.
-Thomas Cooper (12/09/2014 02:17 PM)

LIBERTY 000947

Claim: SSCAS00015 2481

Status

From: Cooper, Thomas Sent: Monday, December 08, 2014 11:48 AM To: mfrick@halliboohsmith.com
Subject: RE: wells Hello Michael -- My understanding is that you are monitoring counsel for the excess
carrier- ACE. It appears that the Pete Law is interested in a high-low with the low in my layer and a high in
the excess layer. Is ACE interested in negotiating a high-low as to cap exposure. Please have the adjuster
contact me. Thanks Thomas R. Cooper IV Liberty International Underwriters 55 Water Street, 18th Floor
New York, NY 10041 Phone No.: (212) 208-4185 Blackberry No: (646) 704-2980 Fax No.: (212) 208-4290
Email: Thomas.Cooper@LibertyIU.com
-Thomas Cooper (12/08/2014 11:48 AM)

New trial date
Case has been moved to 1/12/15. We had a conference with the court and plaintiff said they had 21
witnesses---since we had a 2 day case in front of us the court continued the case..
-Thomas Cooper (12/05/2014 10:31 AM)

Negotiation Status
Plaintiff proposed a bracket of $1M-$3M. LIU offered a bracket of 400/900 in response. Plaintiff counsel
Pete law responded with a high/low proposal of 900k/9 mil.
-Thomas Cooper (12/04/2014 04:33 PM)

PROCESSED INVOICE TO VENDOR
PROCESSED Invoice for Henning Mediation & Arbitration Service, Inc. invoice #7196-TT2 due amount:
$970.00
-Louis Conci (07/18/2013 02:35 PM)

PROCESSED INVOICES
PROCESSED INVOICES from wheeler reporting for $665.50 and tiffany alley for $628.76.
-Louis Conci (07/18/2013 11:37 AM)

CONFIDENTIAL

09/18/2015 09:23 AM

LIBERTY 000948

Claim: 5SCAS00015Z481

LLR Approved
LLR Approved - $600,000 indemnity
-Neal Magnus (05/15/2013 04:51 PM)

CLBU Note
I have approved the attendance of (2) attorneys for Document Review - counsel advises that the insured apartment complex had (3) rooms full of extra large bankers boxes full of old documents including maintenance records which needed to be reviewed by counsel in order to both comply with plaintiffs notice to produce as well as attempt to locate inspection records maintained by the prior management company.
-Michele Simpson (04/22/2013 01:31 PM)

Retention of Counsel
Authority has been obtained to retain panel attorney Kevin Williams of Weinberg Wheeler to defend both the named insured & real estate property manager. Kevin & I discussed the case briefly on 5/7/12, the case has cleared conflicts and he will arrange for answers to be filed. I have provided his associate Chris Byrd with contact info for both Aslan & WSE. We will discuss further as to whether there is any merit to impleading the gas company. Completing RMS referral & establishing a $25,000 defense reserve, which will be re-evaluated upon receipt of counsel's ICA & budget.
-Michele Simpson (05/08/2012 04:58 PM)

Named Insured Endorsement

**CONFIDENTIAL**

Page 25

09/18/2015 09:23 AM

**LIBERTY 000949**

Claim: SSCAS00152481

I have now obtained an updated Named Insured Endorsement (#19) which has been amended to include Aslan Commons LLC. As per my prior coverage analysis, I am requesting authority to retain Kevin Williams of Weinberg Wheeler Hudgins in Atlanta GA to defend both the named insured Aslan and property manager WSE LLC.
-Michele Simpson (05/07/2012 11:45 AM)

Coverage Analysis

Carrier: LSIC Policy: DGLSF2091149100 Effective: 4/1/10 - 4/1/11 Loss Date: 5/31/10 Section II - Who Is An Insured 2.b. - Any person or any organization while acting as your real estate manager. Endt 18 - Designated Premises - includes loss location of 7600 Roswell Road, Atlanta GA Endt 3 - Additional Insured - Managers or Lessor of Premises Triggered by written contract signed by both parties prior to any "occurrence" Endt 21 - Primary Insurance Clause Affords primary and noncontributory AI coverage as required by written contract.                                        I have written to underwriter Allen Hansen, as well as the retail broker, as I could not locate the entity Aslan Commons LLC among the list of Named Insureds under the policy, and have inquired as to whether this entity may have been added per endorsement. If it is confirmed that Aslan Commons LLC is a named insured under the policy, then it is my conclusion that real estate manager WSE LLC would be entitled to coverage and defense as an insured by definition. However, Worthing Holdings LLC dba the Worthing Companies would not be entitled to coverage or defense as they are not a party to the management agreement.
-Michele Simpson (05/06/2012 09:39 PM)

Suit Filed

Suit has now been filed on behalf of tenant Stephen Wells who is alleging burn injuries as a result of the explosion. Named defendants are Aslan Commons LLC, WSE LLC, and Worthing Holdings LLC dba The Worthing Companies. The complaint contains allegations of negligent maintenance of premises, negligent hiring and training of maintenance staff, failure to warn, negligent inspection, etc. The complaint also seeks punitive damages. Directly assessed punitive damages are insurable in Georgia. See Greenwood Cemetery v. Travelers Indem. Co., 232 S.E.2d 910 (Ga. 1977). Federal Ins. Co v. Nat'l Distributing Co., Inc., 417 S.E.2d 671 (Ga. Ct. App. 1992). Vicariously assessed punitive damages would likely be insurable in Georgia because directly assessed punitive damages are insurable.                                        I have obtained and reviewed the management agreement between Aslan & WSE LLC as follows: - effective 1/1/09 for 1 year; renewed for successive 1 year terms unless terminated by either party. - Article 8.03 - Insurance - owner is required to name the manager as an additional insured & owner's insurance is to be primary & non-contributory.
-Michele Simpson (05/06/2012 09:23 PM)

CMS Converted Document - Status Updates by Michele Simpson

CONFIDENTIAL

09/18/2015 09:23 AM

LIBERTY 000950

Claim: 5SCAS000152481

Progressive has filed inter-company arbitration through Arbitration Forums. I have responded that Liberty Surplus is not a member of this forum, that this forum has no binding jurisdiction over LSIC and requested immediate withdrawal.
-Super User (08/17/2011 09:57 PM)

CMS Converted Document - Status Updates by Michele Simpson
Progressive has not supplied any additional documentation, or otherwise responded to my 10/19/10 correspondence. I am sending another follow up letter advising we cannot consider their claim without proof of liability.
-Super User (12/23/2010 11:57 AM)

CMS Converted Document - Case Facts by Michele Simpson
Fire occurred in apartment complex owned by the insured. The cause of the fire was believed to have been a build-up of gas from an open dryer valve/connection however, there is no proof as to who opened the valve (tenant v. maintenance staff).
-Super User (12/23/2010 11:54 AM)

CMS Converted Document - Status Updates by Marcela Flores
Initial acknowledgement letter addressed to Vanessa Ayres sent on 6/4/10
-Super User (06/04/2010 11:30 AM)

**Simpson, Michele**

| | |
|---|---|
| From: | Cooper, Thomas |
| Sent: | Thursday, January 15, 2015 12:05 PM |
| To: | kwilliams@wwhgd.com |
| Cc: | Simpson, Michele |
| Subject: | Wells |

Kevin- you have authority only to 500k on the high-low.  You have The 1m for settlement purposes only.

Contact me or Michele if you have a new offer on the high-low and we will consider it.

Michele's contact info is below. I will be back in NYC at 2pm.

Michele M. Simpson, CPCU
Michele M. Simpson, CPCU
Assistant Vice President
US Casualty Claims
Liberty International Underwriters
55 Water Street, 23rd Floor
New York, NY 10041
(212) 208-9578
(212) 208-4290

1



LIBERTY 001416

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Darin Collier[dwcollier@worthingse.com] |
| **Sent:** | 19 January 2015 09:50:50 |
| **To:** | Mosseri, Miriam |
| **Cc:** | Richard L. Robbins (Richard.Robbins@robbinsfirm.com) |
| **Subject:** | RE: Stephen D. Wells v. Asian Commons, LLC, et al./Claim No.: 5SCAS00152481 |
| **Attachments:** | doc09435020150119090314.pdf, Richard Robbins.vcf |

Miriam –

Thanks for the mobile number; I've attached my full v-card for you which includes my mobile number as well.

As I predicted at the conclusion of last week's trial, the verdict has hit the media:

http://www.dailyreportonline.com/id=1202715405663/Fulton-Jury-Awards-73M-to-Man-Burned-in-Explosio
n-VIDEO-?slreturn=20150019085435
<http://www.dailyreportonline.com/id=1202715405663/Fulton-Jury-Awards-73M-to-Man-Burned-in-Explos
ion-VIDEO-?slreturn=20150019085435>

http://www.ajc.com/news/news/report-jury-awards-73m-to-man-burned-in-gas-line-e/njqPk/
<http://www.ajc.com/news/news/report-jury-awards-73m-to-man-burned-in-gas-line-e/njqPk/>     (Also,
see the attached from Sunday's Atlanta Journal Constitution)

http://blog.cvn.com/65.8-million-award-to-man-burned-in-apartment-gas-line-explosion
<http://blog.cvn.com/65.8-million-award-to-man-burned-in-apartment-gas-line-explosion>

After the Daily Report, the Southeast's chief legal newspaper, ran with the story, I received several calls from attorney acquaintances – and they all asked the same question: If you weren't going to put on a defense, then why did you try such a case?

Miriam, that question is going to be on the table before us for some time.

You know my position was that the plaintiff's settlement demands, which at all times were within policy limits, were reasonable in light of the evidence.   In addition, it was clear to me, and expressed by me to everyone involved on our side, that the defensive strategy of pointing the finger at the plaintiff in hope of achieving some level of contribution had limited upside and tremendous downside in the form of inflaming a jury which would assuredly be disturbed by the nature and extent of the plaintiff's burn wounds.   That predictable outcome unfortunately became reality.   What wasn't predictable, though, was defense counsel's in-the-moment decision to not even put on a case at trial . . . which, again, underscores the question: why was the matter being tried in the first place?

CH 0279

Again, I urge you to timely pursue all efforts to settle this matter immediately, which we now expect will be beyond policy limits. I understand that you have a different case to value at this time, and that you may be waiting on outside opinion of the case's appeal merits to measure your leverage against the plaintiff. You should know, however, that news of this outcome has already begun to cause us reputational damage as feared.   The longer this matter drags on without resolution, the more damage WSE will suffer by the failure to settle prior to, our during, trial.

I have a strong sense of urgency about this situation, which is understandable.   This is not just an "appeal to gain leverage moment" in our work week; it is an easy-to-catastrophize situation which is weighing heavily on us.   We must ensure that the judge writes down the jury's punitive damage award to the statutory cap with the entry of the judgment, which may occur as early as today, and we must ensure that the plaintiff cannot lien our assets after the judgment is entered.   It is imperative that we have a status call as soon as possible so that I can understand ACE's strategy as to these matters and the appeal (as well as questions regarding counsel).

In order to fully represent our interests going forward, we have retained Richard Robbins.   Richard is an extraordinarily gifted and accomplished trial and appellate attorney, and my hope is that you will consider his counsel where our interests are aligned.   We will look to ACE to pay Richard's legal fees and expenses in representing us.   Richard's v-card is attached.   Please copy him on all future correspondence

DWC

From: Mosseri, Miriam [mailto:Miriam.Mosseri@ACEGroup.com]
Sent: Saturday, January 17, 2015 10:11 PM
To: Darin Collier
Subject: RE: Stephen D. Wells v. Asian Commons, LLC, et al./Claim No.: 5SCAS00152481

Darin – here is my cell number: 347-244-0997.

I will call you next week to discuss strategy going forward. I am out of the office until Wednesday but feel free to call me on my cell if you need to reach me before then.

Regards,

Miriam

CH 0280

## CERTIFICATE OF SERVICE

I hereby certify that on October 31st, 2017, I electronically filed the foregoing *Notice of Filing* with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to counsel of record as follows:

> P. Michael Freed
> Danny L. Worker
> Lewis Brisbois Bisgaard & Smith, LLP
> *Attorneys for Plaintiff*
>
> Michael J. Rust
> Gray Rust St Amand Moffett & Brieske LLP
> *Attorneys for Liberty*
>
> Christopher Hampton Avery
> Brian Scott Martin
> Thompson Coe Cousins & Irons, LLP – Houston
> *Attorneys for Liberty*
>
> */s/ Melissa K. Kahren*
> Stephen M. Schatz
> Georgia Bar No. 628840
> Steve.Schatz@swiftcurrie.com
> Thomas B. Ward
> Georgia Bar No. 153081
> Tom.Ward@swiftcurrie.com
> Melissa K. Kahren
> Georgia Bar No. 527406
> Melissa.Kahren@swiftcurrie.com
> Attorneys for American Guarantee

**Swift, Currie, McGhee & Hiers, LLP**
1355 Peachtree St. N.E., Suite 300
Atlanta, Georgia 30309
(404) 874-8800